J-S10012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SULIMAN ALI, | |
| Appellant | No. 525 EDA 2014 |

Appeal from the Judgment of Sentence September 16, 2013
in the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0004208-2012

BEFORE:  GANTMAN, P.J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MARCH 25, 2015**

Appellant, Suliman Ali, appeals from two concurrent sentences of life imprisonment without the possibility of parole imposed following his conviction after a bench trial of three counts of robbery,[1] and violations of the Uniform Firearms Act (VUFA), pursuant to the "Three Strikes" Law.[2]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3701(a)(1)(ii) (threatens another with or intentionally puts him in fear of immediate serious bodily injury in the course of committing a theft); 18 Pa.C.S.A. § 3701(a)(1)(iii) (commits or threatens immediately to commit any felony of the first or second degree); 18 Pa.C.S.A. § 3701(a)(1)(v) (physically takes or removes property from person of another by force however slight).

[2] Specifically, the court convicted Appellant of persons not to possess, use, manufacture, control, sell or transfer firearms, 18 Pa.C.S.A. § 6105, and firearms not to be carried without a license, 18 Pa.C.S.A. § 6106. The parties stipulated that the weapon found was operable, and that Appellant
*(Footnote Continued Next Page)*

Specifically, Appellant alleges his sentence is illegal under **Alleyne v. United States**, 133 S. Ct. 2151 (2013). He also challenges the denial of his pre-trial motion to suppress two inculpatory statements he gave to the police, and the denial of his post-trial motion claiming, in pertinent part, that the verdict was against the weight of the evidence. We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them in their entirety here.[3]

Appellant raises three questions for our review:

[1.] Did the trial court abuse its discretion and err[ ] as a matter of law when it denied Appellant's motion to suppress statements that he had provided to the Hatboro police on April 20, 2012, on the basis that his waiver of his constitutional rights

_(Footnote Continued)_ ―――――――――――――――

was ineligible to carry a concealed weapon, or get a license to carry, by virtue of his prior convictions. (**See** N.T. Trial, 4/22/13, at 184, 200).

[3] For ease of reference, we note briefly that Appellant's conviction arose out of an armed robbery of customers and the owner/cashier of Burdick's News Agency in Hatboro, Pennsylvania. The robbery was recorded on the store's surveillance video. Another surveillance video also captured Appellant outside the bank building next door, first while he waited for several customers at Burdick's to leave, and later when he returned to flee on his distinctive bicycle after the Burdick's owner sounded an alarm. A neighbor who observed Appellant and his wife parked in the middle of a street, close to the scene of the robbery, alerted police. On execution of a search warrant at Appellant's home nearby, the police found a firearm, bicycle, clothing, and related items similar to those used in the robbery on the videos. After apprehension, and waiver of his **Miranda** rights, Appellant gave the Hatboro police two inculpatory statements, in part to exculpate his wife. (**See** Trial Court Opinion, 4/16/14, at 1-7).

- 2 -

to assistance of counsel and right to remain silent were not knowingly, voluntarily, nor intelligently made[?]

[2.] Did the trial court abuse its discretion in denying Appellant's motion for a new trial on the basis that the guilty verdicts were against the weight of the evidence[?]

[3.] Is the trial court's imposition of two (2) consecutive life sentences without the possibility of parole constitutes [sic] an illegal sentence pursuant to the [United] States Supreme Court's holding in ***Alleyne v. United States***, insofar as the trial court made a finding by a preponderance of the evidence that a sentence of twenty-five (25) years of total incarceration was insufficient to protect the public safety[?]

(Appellant's Brief, at 5).

We address Appellant's third issue first. Our standard of review for a challenge to the legality of a sentence is well-settled.

Initially, we note "[a] claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." ***Commonwealth v. Infante***, 63 A.3d 358, 363 (Pa. Super. 2013) (quotations and quotation marks omitted). Issues relating to the legality of sentence are questions of law, and thus, our standard of review is *de novo* and our scope of review is plenary. ***Id.***

***Commonwealth v. Clarke***, 70 A.3d 1281, 1284 (Pa. Super. 2013), *appeal denied*, 85 A.3d 481 (Pa. 2014).

Preliminarily, on this issue, we note that in his statement of questions, Appellant misstates the sentence imposed. The court imposed the two life sentences concurrently, as elsewhere conceded by Appellant. (***See*** Trial Ct. Op., at 7; ***see also*** Appellant's Post-Sentence Motion, 9/26/13, at unnumbered page 2).

On his illegality of sentence claim, Appellant argues chiefly that the trial court should have made an explicit finding that twenty-five years of total confinement was insufficient to protect the public safety, and in any event, it improperly increased his sentence (to life without parole) based on judicial fact-finding, in violation of **Alleyne**.[4] (**See** Appellant's Brief, at 16-17, 27-29). We disagree.

The sentencing court imposed Appellant's "third strike" sentence pursuant to 42 Pa.C.S.A. § 9714(a)(2), and (d). In pertinent part, the statute in force at the relevant time provided that:

> (2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

> \* \* \*

---

[4] Appellant failed to raise the issue of illegality of sentence in his Rule 1925(b) statement of errors. (**See** Concise Statement of Errors, 4/03/14, at 1-3). However, challenges to an illegal sentence cannot be waived and may be reviewed *sua sponte* by this Court. **See Commonwealth v. Melvin**, 103 A.3d 1, 52 (Pa. Super. 2014) (citing cases). Accordingly, we will review the merits of Appellant's claim.

**(d) Proof at sentencing.**—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section. Should a previous conviction be vacated and an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this section would not have been applicable except for the conviction which was vacated.

42 Pa.C.S.A. § 9714(a)(2), (d).

*See also* 42 Pa.C.S.A. § 9721(b):

**(b) General standards.**—In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . .

42 Pa.C.S.A. § 9721(b).

Notably, *Alleyne*, while holding that "facts that increase mandatory minimum sentences must be submitted to the jury," expressly recognized that "[o]ur ruling today does not mean that any fact that influences judicial

- 5 -

discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Alleyne*, *supra* at 2163 (citing cases). In particular, the *Alleyne* Court acknowledged an "exception for the fact of a prior conviction." *Id.* at 2160 n.1; *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000): ("**Other than the fact of a prior conviction**, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added).

Here, on review, we conclude that the sentencing court did no more than take into consideration the long history (from the 1960's) of Appellant's prior convictions for crimes of violence, including the use of firearms. (*See* N.T. Sentencing, 9/16/13, at 24-25). Appellant's sentence does not violate *Alleyne*.[5]

Moreover, Appellant misperceives the scope and applicability of *Alleyne*'s holding. In pertinent part, *Alleyne* held that:

_____

[5] The court also took into consideration Appellant's Pre-Sentence Investigation Report, his lack of remorse, his long history of committing violent crimes, the impact of these crimes on the victims, and the high risk of re-offense if not given a sentence of total confinement. (*See* N.T. Sentencing, at 26-28). Appellant does not dispute that these factors were permissible considerations in the determination of his sentence. (*See* Appellant's Brief, at 27-29).

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

*Alleyne*, *supra* at 2155, overruling *Harris v. United States*, 536 U.S. 545 (2002) (*opinion announcing the judgment of the court*) (quotation marks in original) (citation omitted). Here, the sentencing court did not increase the mandatory minimum sentence by finding an element of a crime not submitted to the finder of fact.[6]

Rather, the Commonwealth gave proper notice of its intention to pursue a mandatory minimum sentence under the "Three Strikes" Act. The court then properly exercised its discretion by imposing a statutorily permitted longer sentence **for the same crime.** Notably, the court did not impose an additional sentence. Nor did the court find an enhanced or additional crime with a new element, not previously considered by the fact-finder. Instead, on its determination that the mandatory minimum sentence was insufficient to protect the public safety, the court chose the option of

---

[6] For this reason alone, *Alleyne* and *Commonwealth v. Newman*, 99 A.3d 86 (Pa. Super. 2014), are distinguishable on their facts and do not apply. (*See* Appellant's Brief, at 27).

sentencing in the higher range provided by the statute.[7]  ***See*** 42 Pa.C.S.A. § 9714(a)(2); (***see also*** N.T. Sentencing, at 24-25, 27-28).

Appellant also argues that the sentencing court failed to make a "require[d] showing that 25 years of incarceration would be insufficient to protect the public safety." (Appellant's Brief, at 27).  We disagree.

First, Appellant fails to develop an argument that some formal, explicitly noted "showing" is required.   Secondly, Appellant offers no pertinent authority for this assertion.  (***See id.***).  For both these reasons, Appellant's issue is waived.  ***See*** Pa.R.A.P. 2119(a), (b).  Moreover, it would not merit relief.

At sentencing, counsel for Appellant, while conceding Appellant's "sordid history," cited his age, seventy-five, as a reason for a lower sentence.[8]  (N.T. Sentencing, at 20).  The Commonwealth argued that Appellant, threatening his victims with a handgun, committed the crime at

_____

[7] Overlooked in Appellant's entire argument is the fact that because this was a bench trial, the finder of fact and the sentencing court were one and the same trial judge.

[8] We recognize the irony that on appeal counsel for Appellant appears to assume that a twenty-five year sentence would be an acceptable alternative to a life sentence, (***see*** Appellant's Brief, at 27), even though at sentencing prior defense counsel argued that a twenty-five year sentence was the equivalent of a life sentence for this seventy-five year old defendant.  (***See*** N.T. Sentencing, at 19-21).  However, we must assess Appellant's claims on appeal under our standard of review.  It is not our role on direct review to weigh the varied strategies of different counsel at different stages of the proceedings.

issue here when he was seventy-four, and on parole from incarceration for his last preceding offense (attempted murder). (**See id.** at 17). The sentencing court, accepting the Commonwealth's argument, gave extensive and comprehensive reasons for its determination that a lesser sentence was insufficient to protect the public safety. (**See id.** at 19-20, 24-25, 27-28).

We conclude that ample statutory authority existed for the sentencing court to impose the sentence it chose, and that **Alleyne** did not prevent the trial court's exercise of that duty. **See Clarke**, **supra** at 1284. For all of these reasons, Appellant's third issue, illegality of sentence, does not merit relief.

In Appellant's first and second questions, he challenges the trial court's denial of suppression of his two confessions, and the weight of the evidence. (**See** Appellant's Brief, at 5).[9]

_____

[9] Counsel for Appellant filed the concise statement of errors on April 3, 2014, twenty-two days late, without having requested an extension or permission to file *nunc pro tunc*. The Commonwealth argues that Appellant has waived his issues on appeal, citing **Commonwealth v. Lord**, 719 A.2d 306 (Pa. 1998), **Commonwealth v. Butler**, 812 A.2d 631 (Pa. 2002), and **Commonwealth v. Castillo**, 888 A.2d 775 (Pa. 2005). (**See** Commonwealth's Brief, at 11-12). Counsel for Appellant concedes that the concise statement was untimely filed. (**See** Appellant's Brief, at 14 n.7). Nevertheless, citing Pa.R.A.P. 1925(c)(3), Appellant's counsel urges us to consider the questions on appeal on their merits, to prevent a "repetitious" claim under the Post Conviction Relief Act. (**Id.**). We disagree with counsel's reasoning. However, recognizing that the trial court has addressed the questions raised, in the interest of judicial economy, we will review the remaining claims on their merits. **See Commonwealth v. Burton**, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) (holding that, if there has been

*(Footnote Continued Next Page)*

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that there is no merit to these issues. The trial court opinion properly disposes of the questions presented. (**See** Trial Ct. Op., at pages 11-17) (concluding that: (1) in the totality of circumstances, including the administering and acknowledgement of **Miranda**[10] warnings, Appellant's two confessions were knowingly, voluntarily, and intelligently made; and (2) trial court properly exercised its discretion in ruling on Appellant's weight claim, where the trial court's factual findings were supported by the record, and assessment of the credibility of witnesses is solely for the fact-finder). Accordingly, on the first and second issues raised, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/25/2015

(Footnote Continued) _____

an untimely filing, this Court may decide appeal on merits if trial court had adequate opportunity to prepare opinion addressing issues raised on appeal).

[10] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

- 10 -

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : 525 EDA 2014
:
V. :
:
SULIMAN ALI : CP-46-CR-0004208-2012

## OPINION

SILOW, J. April /6 , 2014

### INTRODUCTION

Appellant Suliman Ali ("Appellant") appeals from this Court's judgment of sentence issued on September 16, 2013. For the reasons stated below, this Court respectfully submits that Appellant's judgment of sentence should be affirmed.

### FACTS AND PROCEDURAL HISTORY

The instant case arises out of events that occurred on January 27, 2012, in Hatboro, Montgomery County. That day, Appellant entered Burdick's News Agency ("Burdick's") and robbed Sandra Hollis, Mirta Atreides, Martin Atreides, and Michael Ballasy at gunpoint. (Notes of Testimony ("N.T."), Apr. 23, 2013, 5-8, 22, 31, 38.) Evidence at trial revealed that Mirta Atreides was eating lunch at the counter with her husband, Martin Atreides, when she felt someone nudge her twice on her back. (*Id.* at 6.) When she turned around, she saw that an unknown man was holding a gun against her. (*Id.* at 7.) Martin Atreides, who was able to see the handgun in the robber's hand, described it as a small, black revolver, similar to a .38 caliber. (*Id.* at 29.) The robber told Mr. and Mrs. Atreides "I want your money," and forced them to the

register where Sandra Hollis, the owner of Burdick's, was standing. (*Id.* at 8.) At the register, the robber pointed the gun at Hollis. (*Id.* at 39.) She immediately opened the register, began counting the money, and giving it to the robber. (*Id.* at 40.) At this time, Michael Ballasy, a regular customer at Burdick's, walked in through the back door. (*Id.* at 22.) Appellant made the four (4) victims walk to the back of the store. (*Id.* at 40.) Once there, Hollis was able to hit the alarm button and the robber fled the scene. (*Id.* at 42.)

The robber was caught on Burdick's video surveillance inside the store. (N.T., Apr. 22, 2013, 140.) He was also caught on All Systems TV and Satellite video surveillance, riding a mountain bike up to Burdick's at the time of the robbery. (*Id.* at 160.) Appellant, through counsel, stipulated to the authenticity of the videos recovered and that they appeared in court in the same condition as they did on January 27, 2012. (*Id.* at 140.)

Shortly after the robbery occurred, Hatboro resident James DeHope saw a gold Jeep Grand Cherokee stopped in the middle of South Chester Avenue near his neighbor's residence at 87 Williams Lane. (*Id.* at 169, 194; N.T., Apr. 23, 2013, 57-59.) South Chester Avenue parallels York Road. (N.T., Apr. 23, 2013, 57.) Burdick's is located at the intersection of Byberry Road and York Road. (N.T., Apr. 22, 2013, 138.) The distance from Burdick's to 87 Williams Lane along roadways is about one quarter (.25) of a mile. (*Id.* at 169.) The distance from 87 Williams Lane to 9 Hunters Way is approximately one (1) mile. (*Id.* at 170.) Appellant's residence is 9 Hunters Way. (*Id.* at 156.)

DeHope noticed that the gold Jeep had its front passenger door open. (N.T., Apr. 23, 2013, 57.) He saw that an African-American man, later identified to be Appellant, was behind the wheel of the vehicle. (N.T., Apr. 22, 2013, 191; N.T., Apr. 23, 2013, 58.) DeHope observed an

2

African-American woman, later identified to be Appellant's wife, Connie Johnson, walk around from behind the vehicle and get into the passenger seat. (N.T., Apr. 22, 2013, 191; N.T., Apr. 23, 2013, 58-60.) She was carrying a bundle wrapped in cloth that resembled a jacket under her arm. (N.T., Apr. 23, 2013, 58-59.) The car's hatch was not open nor was any door on the driver's side. (*Id.*) The only other location the woman could have come from was DeHope's neighbor's house at 87 Williams Lane. (*Id.*) DeHope had never seen these two (2) people before. (*Id.*) DeHope told a nearby police officer what he had seen and pointed out the gold Jeep to the officer. (*Id.* at 62.)

Officer Andrew Valleley stopped the gold Jeep seen by DeHope on January 27, 2012 within a few blocks of Burdick's about forty-five (45) minutes to one (1) hour after the robbery occurred. (N.T., Apr. 22, 2013, 188.) Appellant was in the driver's seat and Johnson was in the front passenger seat. (*Id.* at 191.) Appellant was wearing a gray sleeveless T-shirt and sweatpants, despite cold January weather. (*Id.* at 192.) Appellant told Ofc. Valleley that he had stopped his vehicle on South Chester Avenue because Johnson was vomiting outside the vehicle. (*Id.* at 193-94.) There was no odor or sign of vomiting about Johnson. (*Id.* at 195.) At South Chester Avenue, where Appellant and Johnson had been stopped, there were no signs that anyone had been vomiting in that area or the area nearby. (*Id.*) Sergeant James Petrik later found a black knit cap under the bushes outside 87 Williams Lane. (*Id.* at 204.) An NMS Labs report found that the black knit cap located under the bushes at 87 Williams Lane had Appellant's DNA on it. (*Id.* at 165-66.) Appellant, through counsel, stipulated to the contents and results of the NMS report. (*Id.*)

3

Police officers executed a search warrant on Appellant's home at 9 Hunters Way in Hatboro. (*Id.* at 143-44, 155.) From Appellant's home, police recovered a Taurus handgun, a bicycle, a pair of sweatpants, a blue nylon bag, a pair of sneakers, a pair of fingerless gloves, and four hundred sixteen dollars ($416) in U.S. currency. (*Id.* at 146-158.) The black Taurus handgun closely resembled the gun used in the robbery at Burdick's on January 27, 2012. (*Id.* at 164.) The bicycle closely resembled the robber's bicycle from the surveillance video in that both bicycles had two (2) LED headlights on the handlebars, the same or similar color scheme, and a full-suspension mountain bike frame. (*Id.* at 149, 202-03.) The sweatpants also closely resembled the ones that the robber wore. (*Id.* at 150-51.) The blue nylon bag, sneakers, and fingerless gloves recovered from Appellant's residence, all of which contained Appellant's DNA, closely resembled the items the robber is shown to use in the video surveillance. (*Id.* at 152-55, 162-64.) Police found the four hundred sixteen dollars ($416) in U.S. currency in a purse belonging to Johnson. (*Id.* at 158.)

Appellant, through counsel, stipulated that his prior record makes him a person not to possess a firearm pursuant to 18 Pa. C.S. § 6105 and that he did not possess a license to carry a firearm pursuant to 18 Pa. C.S. § 6106. (*Id.* at 184, 200.) Appellant also stipulated to the fact that the firearm recovered at his home was tested by Detective John Finor and found to be operable and within the definition of "firearm" under 18 Pa. C.S. §§ 6105 and 6106. (*Id.* at 184.)

On April 20, 2012, Appellant was taken into custody by the Hatboro Police Department. (*Id.* at 16.) Once at the station, Detective Sergeant Cameron Goold, a 25-year veteran of the Hatboro Police Department, gave Appellant his *Miranda* warnings, both orally and in writing. (*Id.* at 18-21.) Det. Sgt. Goold reviewed the *Miranda* form with Appellant, and Appellant

4

indicated that he understood, initialed each question, and signed the form. (*Id.*) Appellant indicated that he was willing to speak with police and give a voluntary statement. (*Id.* at 21.) At around 1:30 p.m., Appellant gave a written statement to Hatboro Police stating that he did not want to speak about the robbery at Burdick's except to say that his wife had nothing to do with it. (*Id.* at 26; Commonwealth's Exhibit 14.) After taking this statement, Hatboro Police placed Appellant in a holding cell. (*Id.* at 28.)

At around 2:30 p.m., as Det. Sgt. Goold walked by the holding cell in order to leave the processing room, Appellant asked to give a second statement. (*Id.* at 29.) Det. Sgt. Goold asked Appellant what he wanted to tell him, and Appellant responded, "I did it." (*Id.*) At this time, Det. Sgt. Goold took Appellant out of the holding cell, and placed him in the processing room, where he took out a second *Miranda* rights form and again advised Appellant of his rights. (*Id.* at 30.) He followed the same process and procedure to obtain a signed *Miranda* form and statement from Appellant. (*Id.*)

In Appellant's second statement, he admitted to committing the robbery at Burdick's on January 27, 2012. (Commonwealth's Exhibit 15 at 1.) He admitted that he stole nine hundred ($900) in U.S. currency from Burdick's to pay taxes on a house in New Jersey. (*Id.* at 1, 3.) He admitted that he used a gun during the robbery. (*Id.* at 2.) He described how when he arrived outside of Burdick's, he sat in front of the empty bank next door, waiting for people to exit. (*Id.*) He admitted that while he was committing the robbery, there were four (4) people inside the store, and he told them to go to the cash register. (*Id.*) He described how when he initially walked in, two (2) of the victims were sitting down, one (1) was by a cash register, and there was an older gentleman in the back of the store. (*Id.*) Appellant admitted that he told the

5

woman behind the cash register to give him the money and she then started to count it. (*Id.* at 3.) He then admitted that after he got the money he ran out the front door, got on his bicycle, and fled the scene. (*Id.*)

Det. Sgt. Goold testified that his exchange with Appellant was cordial, polite, and conversational in tone. (N.T., Apr. 22, 2013, 16, 22.) Appellant did not show signs of impairment or duress. (*Id.* at 16, 22, 37.) Police never threatened nor made any promises to Appellant. (*Id.* at 22-23, 33, 38, 54, 105.) At no time after waiving his rights did Appellant invoke his rights to remain silent or to have a lawyer present. (*Id.* at 37.)

On April 22, 2013, this Court held a suppression hearing, where Appellant sought to suppress the two (2) written statements given by Appellant to Hatboro Police on April 20, 2012 on the ground that Appellant's waiver of his *Miranda* rights was involuntary. (*Id.* at 6-7.) This Court denied the Motion to Suppress and held that Appellant gave both statements knowingly, voluntarily, and intelligently after having been informed of his *Miranda* rights each time. (*Id.* at 126.) The notes of testimony of the suppression hearing held on April 22, 2013 were stipulated to and made part of the trial record as it related to the manner in which Appellant's statements were taken. (*Id.* at 173.)

On April 23, 2013, this Court found Appellant guilty beyond a reasonable doubt of one (1) count of Robbery—Threatening Serious Bodily Injury, 18 Pa. C.S. § 3701(a)(1)(ii); one (1) count of Robbery—Committing or Threatening to Commit any F1 or F2, 18 Pa. C.S. § 3701(a)(1)(iii); one (1) count of Robbery—Taking Property by Force, 18 Pa. C.S. § 3701(a)(1)(v); one (1) count of Person not to Possess a Firearm, 18 Pa. C.S. § 6105(a)(1); and one (1) count of Possessing a Firearm Without a License, 18 Pa. C.S. § 6106(a)(1).

6

On September 16, 2013, the Commonwealth having filed a notice of intent to seek mandatory sentence on each of Appellant's two (2) first degree robbery convictions, this Court sentenced Appellant to two (2) concurrent sentences of life imprisonment without the possibility of parole. On September 26, 2013, Appellant, through counsel, filed a written Post-Sentence Motion that the evidence presented at trial was insufficient, that the verdict was contrary to the weight of the evidence, and that the sentence imposed was an abuse of judicial discretion. This Court issued an Order on January 16, 2014 (docketed January 17, 2014), denying Appellant's Motion in its entirety.

Appellant, through counsel, filed a Notice of Appeal on February 18, 2014. This Court issued an Order on February 19, 2014 (docketed February 20, 2014), directing Appellant to file a Concise Statement of Errors Complained of on Appeal ("Concise Statement") within twenty-one (21) days. Appellant filed his Concise Statement on April 3, 2014.

## ISSUES

Appellant's Concise Statement raises the following allegations of error against this Court:

I.  **Whether Appellant's conviction for the offenses of Robbery, Persons Not to Possess a Firearm, and Carrying a Firearm without a License are supported by legally sufficient evidence of the record in that:**

    a. **The evidence pointing to Appellant as the perpetrator of the January 27, 2012 armed robbery of Burdick's is not sufficient to satisfy the beyond a reasonable doubt standard;**

    b. **The robbery victims were unable to identify Appellant as the individual who had robbed them; and**

7

    c.   The videotape of the event does not show Appellant and is insufficiently clear to identify any person.

II.   Whether the trial court abused its discretion in denying Appellant's Motion for a New Trial because the guilty verdicts were against the weight of the evidence, in that:

    a.   None of the victims of the January 27, 2012 armed robbery of Burdick's could positively identify Appellant as the perpetrator;

    b.   When Appellant was stopped by police shortly after the robbery, he was not wearing the clothing described by the robbery victims nor did any of the officers detect any odor or visual presence of vomit; and

    c.   The videotape of the incident is not sufficiently clear to identify Appellant as the perpetrator or as the individual who possessed the alleged firearm.

II.   Whether the trial court abused its discretion and erred as a matter of law when it denied Appellant's Motion to Suppress Statements that he had provided to police on April 20, 2012 because his waiver of his constitutional rights to assistance of counsel and right to remain silent were not knowingly, voluntarily, nor intelligently made.

## DISCUSSION

I.   Evidence adduced at trial was sufficient to support Appellant's convictions of Robbery, Persons Not to Possess a Firearm, and Possession of a Firearm Without a License.

Appellant asserts on appeal that the Commonwealth failed to present sufficient evidence to support Appellant's conviction of guilty on the charges of Robbery, Person not to Possess a Firearm, and Possession of a Firearm Without a License.

In reviewing a sufficiency of the evidence claim, the standard to be applied is whether, viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Passmore*, 857 A.2d 697, 704 (Pa. Super. 2004) (citing *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa. Super. 2003) (citations omitted)). In applying this test, the reviewing court may not weigh the evidence and substitute its judgment for that of the fact-finder. *Commonwealth v. Sinnott*, 30 A.3d 1105, 1110 (2011). "[T]he critical inquiry is not whether the court believes the evidence established guilt beyond a reasonable doubt, but whether the evidence believed by the fact-finder was sufficient to support the verdict. The proper question is not whether the defendant's contentions are supported by the record, but whether the verdict is so supported." *Id*.

To sustain a conviction, the Commonwealth need not have presented evidence such as would preclude every possibility of the defendant's innocence. *Commonwealth v. Sanders*, 42 A.3d 325, 329 (Pa. Super. 2012) (citation omitted). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances. *Id*. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Causey*, 833 A.2d 165, 172 (Pa. Super. 2003) (citations omitted). Furthermore, if the record contains any support for the conviction, it may not be disturbed. *Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2008). Finally, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. *Causey*, 833 A.2d at 172.

9

Here, Appellant alleges that the evidence adduced at trial is insufficient to satisfy the beyond the reasonable doubt standard because: a) the evidence pointing to Appellant as the perpetrator of armed robbery is insufficient to satisfy the beyond a reasonable doubt standard; b) the robbery victims were unable to identify Appellant as the individual who robbed them; and c) the videotape does not show Appellant and is insufficiently clear to identify any person. This claim is entirely meritless.

The Commonwealth established beyond a reasonable doubt that Appellant robbed victims Sandra Hollis, Mirta Atreides, Martin Atreides, and Michael Ballasy at gunpoint. Each victim testified that an individual possessed a black handgun and threatened them with it in the course of committing a theft on January 27, 2012 at Burdick's in Hatboro, Montgomery County. Pursuant to the execution of a search warrant, police recovered a black Taurus handgun, a pair of sweatpants, a mountain bike, fingerless riding gloves, a pair of sneakers, a blue nylon bag, and four hundred sixteen dollars ($416) in U.S. currency from Appellant's home. The gun, sweatpants, mountain bike, gloves, sneakers, and nylon bag all resembled those items that the robber used. The gloves, sneakers, and bag all contained Appellant's DNA. Police found a black knit cap in the area of South Chester Avenue within blocks of where the robbery occurred. The knit cap was located under bushes, where Appellant was observed stopped in his vehicle shortly after the robbery. The knit cap contained Appellant's DNA. Furthermore, Appellant gave a signed, written statement in which he admitted to committing the robbery at Burdick's on January 27, 2012 and provided details of the robbery.

The Commonwealth also established beyond a reasonable doubt that Appellant possessed a firearm on January 27, 2012 in violation of 18 Pa. C.S. § 6105(a), Person not to

10

Possess a Firearm, and 18 Pa. C.S. § 6106(a), Possession of a Firearm Without a License. As mentioned *supra*, the four (4) victims testified that an individual robbed them at gunpoint on that date, and Appellant signed a written confession admitting to possessing a handgun. Appellant stipulated that his prior record makes him a person not to possess a firearm pursuant to 18 Pa. C.S. § 6105. Appellant stipulated that he does not have a license to possess a firearm and the firearm recovered from 9 Hunters Way was tested by Det. Finor and found to be operable and within the definition of 18 Pa. C.S. §§ 6105 and 6106.

Looking at all evidence in a light most favorable to the Commonwealth as the verdict winner, sufficient evidence was presented to convict Appellant of the aforementioned crimes. Accordingly, Appellant should be denied relief on this ground.

II.  **The Court properly denied Appellant's Post-Sentence Motion for a New Trial because it granted proper weight to the evidence presented at trial to sustain Appellant's convictions for Robbery, Person Not to Possess a Firearm, and Possession of a Firearm Without a License.**

Appellant next posits that the trial court erred in denying Appellant's Post-Sentence Motion for a New Trial because his convictions were against the weight of the evidence. This Court respectfully submits that Appellant is not entitled to relief on this claim.

The standard of review for a challenge to the weight of the evidence is well-settled. The finder of fact is the exclusive judge of the weight of the evidence as the fact-finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). An appellate court

11

cannot substitute its judgment for that of the finder of fact. *Id*. Therefore, when reviewing a challenge to the weight of the evidence, the verdict may be reversed only if the verdict is "so contrary to the weight of the evidence as to shock one's sense of justice." *Commonwealth v. Davidson*, 860 A.2d 575, 582 (Pa. Super. 2004) (citing *Davis v. Mullen*, 773 A.2d 764, 766 (Pa. 2001). "When the figure of Justice totters on her pedestal, or when the . . . [finder of fact's] verdict, at the time of its rendition, causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Davidson*, 860 A.2d at 581 (internal quotations and citations omitted). Pennsylvania courts have repeatedly emphasized that "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." *Commonwealth v. Forbes*, 867 A.2d 1268, 1273 (Pa. Super. 2005) (citation omitted).

Furthermore, where the trial court has ruled on a weight of the evidence claim, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. *Champney*, 832 A.2d at 408. Even where the evidence is conflicting, the credibility of the witnesses is solely for the fact-finder, and if supported by the record, the trial court's denial of a motion for new trial will not be disturbed. *Burns*, 765 A.2d at 1149-50; *Commonwealth v. Holmes*, 663 A.2d 771, 774 (Pa. Super. 1995).

Here, Appellant contends that the trial court erred in denying Appellant's Post-Sentence Motion for a New Trial on the basis that the guilty verdicts were against the weight of the evidence because: a) none of the victims of the January 27, 2012 armed robbery of Burdick's

12

could positively identify Appellant as the perpetrator; b) when Appellant was stopped by police shortly after the robbery, he was not wearing the clothing described by the robbery victims nor did any of the officers detect any odor or visual presence of vomit; and c) the videotape of the incident is not sufficiently clear to identify Appellant as the perpetrator or as the individual who possessed the firearm. Appellant is not entitled to relief.

The Commonwealth presented compelling evidence of Appellant's guilt. This evidence was more than sufficient to support this Court's guilty verdicts for the crimes of Robbery, Person Not to Possess a Firearm, and Possession of a Firearm Without a License. As was within its province, this Court believed the testimony from the four (4) victims that an individual robbed them at gunpoint on January 27, 2012 at Burdick's. One of the victims, Mr. Atreides, gave a detailed description of the person who robbed them at gunpoint in a statement given to police on February 2, 2012. (N.T., Apr. 23, 2013, 35; Defense Exhibit 2.) The description matched that of Appellant. This Court heard Det. Sgt. Goold describe the items seized pursuant to the execution of a search warrant, including a black Taurus handgun, a pair of sweatpants, a mountain bike, fingerless riding gloves, a pair of sneakers, a blue nylon bag, and four hundred sixteen dollars ($416) in U.S. currency from Appellant's home. The Court also heard Det. Sgt. Goold testify that the gun, sweatpants, mountain bike, gloves, sneakers, and bag all resembled items that the robber used as seen in video surveillance from before, during, and immediately after the robbery. Moreover, the gloves, sneakers, and bag resembling those of the robber all contained Appellant's DNA. The Commonwealth presented evidence that the knit cap containing Appellant's DNA was recovered from the bushes in the area of South Chester Avenue within blocks of where the robbery occurred and where Appellant was seen to be

13

stopped on South Chester Avenue shortly after the robbery. The Court heard Hatboro resident DeHope relate his observations that, while the gold Jeep was stopped on South Chester Avenue, Appellant's wife was carrying a bundle seemingly wrapped in a jacket. The Court also listened to Ofc. Valleley's testimony that Appellant was wearing only a sleeveless T-shirt when Appellant was stopped by police shortly after the robbery, despite cold January weather. Furthermore, the Commonwealth presented the Court with Appellant's signed, written statements to police revealing his admissions to possessing a handgun and committing the Burdick's robbery on that date. Whether the fact-finder is to believe Appellant robbed the victims in Burdick's at gunpoint and was in possession of an operable firearm at the time is within the sound discretion of the fact-finder and ought not to be disturbed. This Court did not palpably abuse its discretion by denying Appellant's Post-Sentence Motion based on the weight of the evidence; therefore, Appellant's issue fails and Appellant should be denied relief on this ground.

## III.     The Court did not err in denying Appellant's Motion to Suppress Statements.

In his third issue on appeal, Appellant contends that the Court erred in denying Appellant's Motion to Suppress Statements to the Hatboro Police on April 20, 2012 on the basis that Appellant's waiver of his constitutional rights to assistance of counsel and right to remain silent were not knowingly, voluntarily, nor intelligently made. Appellant is not due relief on this ground.

When evaluating a trial court's refusal to suppress evidence, the appellate court must determine:

14

whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Manley*, 985 A.2d 256, 263 (Pa. Super. 2009) (citing *Commonwealth v. Patterson*, 940 A.2d 493, 502 (Pa. Super. 2007)). This Court respectfully submits that its findings of fact have firm support in the record, and that this Court drew the correct legal conclusions from them in refusing to suppress Appellant's incriminatory statements to police.

To determine whether a defendant's inculpatory statements to the police should be suppressed, a court must determine whether the statements were made voluntarily. See *Commonwealth v. Nester*, 709 A.2d 879, 882 (Pa. 1998) (citing *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991) ("When deciding a motion to suppress a confession, the touchstone inquiry is whether the confession was voluntary.")). When reviewing the voluntariness of inculpatory statements, the court must examine the totality of the circumstances. *Commonwealth v. Templin*, 795 A.2d 959, 961 (Pa. 2002). To make this assessment, a court must look to factors such as the duration and means of interrogation, the physical and psychological state of the accused, the conditions attendant to the detention, the attitude of the interrogator, and any and all other factors that could drain a person's ability to withstand coercion. *Withrow v. Williams*, 507 U.S. 680, 693 (1992); *Commonwealth v. Roberts*, 969 A.2d 594, 598 (Pa. Super. 2009).

15

The Pennsylvania Supreme Court has emphasized the importance of a knowing, intelligent, and voluntary waiver of *Miranda* rights when considering whether a defendant's rights were compromised:

> the fact that warnings were given is an important factor tending in the direction of a voluntariness finding . . . It bears on the coerciveness of the circumstances, for it reveals that the police were aware of the suspect's rights and presumably prepared to honor them. And . . . it bears upon the defendant's susceptibility, for it shows that the defendant was aware that he had a right not to talk to the police.

*Templin*, 795 A.2d at 966 (citing W.R. LaFave et al., *Criminal Procedure*, § 6.2(c) at 460).

Upon reviewing the totality of the circumstances surrounding Appellant's inculpatory statements to the police, this Court finds they were voluntarily made and, therefore, properly admitted.

Appellant's statements were the product of Appellant's voluntary decision to speak to the police. Upon Appellant's arrival at the police station, police promptly advised him of his *Miranda* rights and Appellant expressly waived those rights before providing his first written statement to police. After police obtained Appellant's first statement and placed him in a holding cell, Appellant initiated a conversation with Det. Sgt. Goold as Det. Sgt. Goold walked past the cell. Appellant voluntarily told Det. Sgt. Goold that he committed the robbery and that he wished to provide a second statement. Police again advised Appellant of his *Miranda* rights and Appellant again expressly waived those rights. Moreover, Appellant was cooperative and polite, and did not appear to be under any impairments. Further, the record shows that Det. Sgt. Goold was professional, polite, and calm in addressing Appellant.

16

Therefore, after reviewing the totality of the circumstances surrounding Appellant's inculpatory statements, this Court concludes that the statements were voluntary and, thus, properly admitted. Accordingly, Appellant's final claim is devoid of merit.

## CONCLUSION

Based upon the foregoing, this Court respectfully submits that the September 16, 2013 judgment of sentence should be affirmed.

BY THE COURT:

_____
GARY S. SILOW                    J.
COURT OF COMMON PLEAS
MONTGOMERY COUNTY
PENNSYLVANIA
38TH JUDICIAL DISTRICT

Copies sent on April /6 , 2014
to the following:
Clerk of Courts (original)
Robert M. Falin, Esquire, Deputy District Attorney, Chief of Appeals
Timothy P. Wile, Esquire, Assistant Public Defender, Chief, Appellate Division
Suliman Ali, Appellant
via certified mail # 7010-2780-0001-3020-0829
S.C.I. Huntingdon
1100 Pike Street
Huntingdon, PA 16654-1112

_____
Judicial Secretary

17