**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ZAID ABDUL NAFEES SALAM | : | |
| | : | |
| Appellant | : | No. 2512 EDA 2017 |

Appeal from the Judgment of Sentence June 30, 2017
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0006494-2015

BEFORE:   GANTMAN, P.J., OTT, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED OCTOBER 26, 2018**

Appellant, Zaid Abdul Nafees Salam, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial convictions for kidnapping, involuntary deviate sexual intercourse ("IDSI"), and two counts of simple assault.[1]   We affirm Appellant's convictions; vacate the sexually violent predator ("SVP") designation; remand the matter to the trial court to issue a revised notice to Appellant regarding his registration requirements under 42 Pa.C.S.A. § 9799.23; and affirm the judgment of sentence in all other respects.

In its opinion, the trial court accurately set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

---

[1] 18 Pa.C.S.A. §§ 2901(a)(3); 3123(a)(1); 2701(a)(1), respectively.

---

*   Retired Senior Judge assigned to the Superior Court.

Appellant raises three issues for our review:

WHETHER THE VERDICT ON THE CHARGE OF KIDNAPPING WAS RENDERED ON INSUFFICIENT EVIDENCE BECAUSE THE COMMONWEALTH FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT [APPELLANT] UNLAWFULLY REMOVED ANOTHER A SUBSTANTIAL DISTANCE UNDER THE CIRCUMSTANCES FROM THE PLACE WHERE HE WAS FOUND, OR IF HE UNLAWFULLY CONFINED ANOTHER FOR A SUBSTANTIAL PERIOD IN A PLACE OF ISOLATION, WITH INTENT TO INFLICT BODILY INJURY ON OR TO TERRORIZE THE VICTIM OR A LIAR VIA…ANOTHER?

WHETHER THE VERDICT ON THE CHARGE OF IDSI WAS RENDERED ON INSUFFICIENT EVIDENCE BECAUSE THE COMMONWEALTH FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT [APPELLANT] ENGAGED IN DEVIATE SEXUAL INTERCOURSE WITH A COMPLAINANT BY FORCIBLE COMPULSION?

IS IT UNCONSTITUTIONAL TO LABEL [APPELLANT] A SEXUALLY VIOLENT PREDATOR SUBJECT TO REGISTRATION REQUIREMENTS WHEN IT IS UNDISPUTED THAT THE PROCESS LEADING TO THE LABEL IS ITSELF UNCONSTITUTIONAL?

(Appellant's Brief at 10).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Gregory M. Mallon, we conclude Appellant's first and second issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of those issues. (*See* Trial Court Opinion, filed November 17, 2017, at 4-6) (finding: **(1)** Commonwealth presented evidence that Appellant forcefully removed Victim from her home at knifepoint; Victim said Appellant threatened to kill her if she did not go to Appellant's residence with him; Appellant held knife to

Victim's throat and pinned her down with baseball bat, which caused Victim to have difficulty breathing; Commonwealth presented sufficient evidence to sustain Appellant's kidnapping conviction;[2] **(2)** Victim testified that Appellant put his penis in her mouth and in her anus; Victim said Appellant threatened her and Victim was afraid to reject Appellant's commands; Commonwealth presented sufficient evidence to sustain Appellant's IDSI conviction).  Thus, we affirm Appellant's first and second issues on the basis of the trial court's opinion.

In his third issue, Appellant argues his SVP status is illegal in light of recent Pennsylvania decisions.[3]  We agree with Appellant's position.

The Pennsylvania Supreme Court has made clear that the registration requirements under the Sexual Offender Registration and Notification Act ("SORNA") constitute criminal punishment.  ***Commonwealth v. Muniz***, 640 Pa. 699, 164 A.3d 1189 (2017), *cert. denied*, ___ U.S. ___, 138 S.Ct. 925, 200 L.Ed.2d 213 (2018).  In light of ***Muniz***, this Court held: "[U]nder

_____

[2] "[F]or purposes of Pennsylvania's kidnapping statute, a 'place of isolation' is not geographic in nature, but contemplates that confinement of a victim where…she is separated from the normal protections of society in a fashion that makes discovery or rescue unlikely."  ***Commonwealth v. Rushing***, 627 Pa. 59, 74, 99 A.3d 416, 425 (2014).

[3] The trial court did not address this issue because Appellant did not raise it in his Rule 1925(b) statement.  Nevertheless, Appellant's claim presents a non-waivable challenge to the legality of his sentence.  ***See Commonwealth v. Randal***, 837 A.2d 1211 (Pa.Super. 2003) (*en banc*) (explaining challenges to illegal sentence cannot be waived, assuming jurisdiction is proper).

*Apprendi* and *Alleyne*, a factual finding, such as whether a defendant has a mental abnormality or personality disorder that makes him…likely to engage in predatory sexually violent offenses, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder."[4] *Commonwealth v. Butler*, 173 A.3d 1212, 1217 (Pa.Super. 2017), *appeal granted*, ___ Pa. ___, 190 A.3d 581 (2018) (internal citations and quotation marks omitted). This Court further held: "[S]ection 9799.24(e)(3) of SORNA violates the federal and state constitutions because it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt."[5] *Id.* at 1218. The *Butler* Court concluded that trial courts can no longer designate convicted defendants as SVPs or hold SVP hearings, "until [the] General Assembly enacts a constitutional designation mechanism." *Id.* (vacating appellant's SVP designation and remanding to trial court for sole purpose of issuing appropriate notice under 42 Pa.C.S.A. § 9799.23, governing reporting requirements for sex offenders, as to appellant's registration obligation).

Instantly, following an assessment by the Sexual Offender Assessment

---

[4] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013).

[5] *See* 42 Pa.C.S.A. § 9799.24(e)(3) (stating: "At the hearing prior to sentencing, the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator").

Board, the court imposed SVP status on Appellant on March 1, 2017. In light of ***Muniz*** and ***Butler***, Appellant's SVP designation constitutes an illegal sentence. Accordingly, we affirm Appellant's convictions, based on the trial court's opinion; vacate the SVP designation; and remand the matter to the trial court to issue a revised notice to Appellant of his registration obligations under 42 Pa.C.S.A. § 9799.23.[6] ***See Butler, supra***. We affirm the judgment of sentence in all other respects.

Judgment of sentence affirmed in part and vacated in part; case remanded with instructions. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/18

---

[6] SORNA, at 42 Pa.C.S.A. §§ 9799.10-9799.41, went into effect on December 20, 2012, and became the statute governing the registration and supervision of sex offenders. SORNA was recently amended by H.B. 631, 202 Gen. Assem., Reg. Sess. (Pa. 2018), Act 10 of 2018. Upon remand, the court must be cognizant that the prior version of SORNA applies to Appellant.

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA | NO.      6494-15

V.

ZAID SALAM

## OPINION

Mallon, J.                                                                    Filed: 11/17/17

Zaid Salam has appealed to the Superior Court. The nature and history of the case are as

follows:

### I. Nature and History of the Case

Following a jury trial, Salam was found guilty of kidnapping, two counts of simple

assault, and involuntary deviate sexual intercourse.[1] On June 30, 2016,[2] this court sentenced

Appellant to 90 to 180 months of incarceration on the involuntary deviate sexual intercourse

conviction,[3] 12 to 24 months of consecutive incarceration on the first simple assault conviction,

12 to 24 months of consecutive incarceration on the second simple assault conviction, and 66 to

132 months of concurrent incarceration on the kidnapping conviction. Salam was given credit for

time served from 8/5/15 through 6/30/17 and was found not to be boot camp or RRRI eligible.

He was directed to undergo sex offender treatment, mental health treatment, and drug and

alcohol treatment. As part of his sentence, and following a determination that he was a sexually

violent predator, Salam was required to register under Megan's Law.

At trial the Commonwealth produced evidence that established that on August 4, 2015,

victim Sade Gwinn was out at a bar in Chester, Pennsylvania with her then boyfriend, Salam

---

[1] He was found not guilty of aggravated assault, sexual assault, aggravated indecent assault, and indecent assault.

[2] This sentence was amended on July 5, 2017 to include a Megan's Law Tier 3 registration.

[3] Appellant was also sentenced to 5 years of probation, consecutive to parole, on this conviction.

(hereinafter "Appellant") to celebrate his birthday. N.T., 5/3/16, p. 46-47. An altercation ensued after the Appellant became jealous because Gwinn was speaking to someone else. The police were called to the scene. *Id.* at 48-51. Gwinn told the police that she had been struck in the head by someone who had then left. When it came time to go home, Gwinn left the bar with a friend, and went to her friend's home because she was afraid to return to her own house. *Id.* at 52.

Eventually, when Gwinn returned to her own home later that night, she found the Appellant hiding in her kitchen in the dark. The Appellant asked her where she had been, threatened her with a knife, took her cell phone, and removed her from her home. *Id.* at 53-54. He told her that "if she wanted to live then she better go with him or he will kill her." *Id.* at 53. When she arrived to the Appellant's home, Gwinn discovered that he had already removed her personal items, such as her clothes and shoes, from her home and had taken them to his residence. While there the Appellant choked her with a bat and threw her down on a bed. *Id.* at 57. He held her down. *Id.* at 57-58. Gwinn explained that at that moment she believed that he was going to kill her. *Id.* at 58.

The Appellant held Gwinn against her will. He repeatedly threatened her and told her that he would kill her if she spoke or didn't do what he said. *Id.* at 60. She pleaded to leave and he punched her in the face and fractured her nose. *Id.* at 59. At some point she fell asleep. *Id.* at 62. When she awoke she once again pleaded to go home. *Id.* at 62. The Appellant responded that if she wanted "to go home you got to give me what I want. You messed up my birthday." *Id.* at 62. He then told her that he wanted, which was oral and anal sex. *Id.* The Appellant then sexually assaulted Gwinn. She explained to the jury that she felt that she had no choice but to comply with his demands. She testified that he put his penis in her mouth. *Id.* at 63. He then put his penis in her anus. *Id.* He also touched her genitals with his fingers. *Id.* at 63. Afterward, the Appellant

2

ordered her to take a shower and gave her some of her clothing that he had taken to his home. *Id.* at 64. When she was dressed, he gathered all of her belongings and the Appellant walked her home. *Id.* at 64. Gwinn approximated that she remained in a room that the Appellant rented[4] until around 8 A.M. the following day. *Id.* at 61. Before he left, the Appellant took Gwinn's wallet. *Id.* at 66. When he turned his back to leave, Gwinn called the police. *Id.* at 66. Appellant was later charged with the aforementioned offenses.

As set forth above, a jury found the Appellant guilty of kidnapping, simple assault, and involuntary deviate sexual intercourse. Appellant filed a counseled appeal on July 28, 2017. Appellant raises the following issues in his Statement of Matters Complained of on Appeal:

(1) Whether the verdict on the charge of kidnapping was rendered on insufficient evidence because the Commonwealth failed to prove beyond a reasonable doubt that Mr. Salam unlawfully removed another a substantial distance under the circumstances from the place where he was found, or if he unlawfully confines another for a substantial period in a place of isolation, with intent to inflict bodily injury on or to terrorize the victim or another? 18 Pa.C.S.A. §2901

(2) Whether the verdict on the charge of IDSI was rendered on insufficient evidence because the Commonwealth failed to prove beyond a reasonable doubt that Mr. Salam engaged in deviate sexual intercourse with a complainant by forcible consumption? 18 Pa.C.S.A. §3123

(3) Whether the learned Trial Court abused its discretion when it allowed amendment of bills of information at the Commonwealth's request absent a showing of a defect in form, the description of offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense? Pa.R.Crim.P. §564

(4) Whether the learned Trial Court committed non-waivable error when it illegally sentenced without making a determination whether the Appellant is an eligible RRRI offender? 61 Pa.C.S.A. §4505(a)

(5) Whether the sentence is harsh and excessive under the circumstances? 42 Pa.C.S.A.

---

[4] Gwinn explained it as "a house with just rooms, no kitchen, no living room. Just bedrooms." N.T., 5/3/16, p. 56.

3

9781

## II. Discussion

### A. Sufficiency of the Evidence

In his first two issues on appeal, the Appellant challenges that sufficiency of the evidence. Appellant claims that the evidence was insufficient for a jury to find him guilty of both kidnapping and deviate sexual intercourse. In reviewing a challenge to the sufficiency of the evidence, an appellate court is to consider the evidence admitted at trial and all reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Ratsamy,* 594 Pa. 176, 934 A.2d 1233, 1237 (2007). A court may not substitute its judgment for that of the fact-finder and the critical inquiry is whether the evidence *believed by the fact-finder* was sufficient to support the verdict as opposed to whether the court believes the evidence established guilt beyond a reasonable doubt. *Commonwealth v. Sinnott,* 612 Pa. 321, 331, 30 A.3d 1105, 1110 (2011) (emphasis added). Lastly, the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant. *Commonwealth v. Charlton,* 902 A.2d 554, 455 (Pa. Super. 2006).

#### a. Kidnapping

A person is guilty of kidnapping in Pennsylvania under 18 Pa.C.S.A. § 2901 when that unlawfully removes another a substantial distance under the circumstances from the place where he or she is found, or if he unlawfully confines another for a substantial period in a place of isolation, when done with the intent to inflict bodily injury on or to terrorize the victim or another. In order to be found guilty of kidnapping, a jury must find the following elements: (1) that the defendant removed the victim from the place where he found her and moved her a distance, that, under the circumstances, you find to be substantial, or that he confined her for a

4

substantial period in a place of isolation; (2) that the defendant did so unlawfully – by force, threat or deception, and (3) that the defendant did so with the intention to inflict bodily injury on or to terrorize the victim. *See* Pa. SSJI (Crim), 15.2901 (2014).

In the instant case, the Commonwealth presented evidence that the Appellant forcefully removed the victim from her home at knifepoint, satisfying the first and second elements of the offense. Next, the Commonwealth presented evidence that not only did the Appellant intend to inflict injury upon and terrorize the victim in this case, he succeeded. The victim testified at trial that the Appellant forced her from her home and repeatedly made verbal threats that he would kill her if she did not cooperate. He held a knife to her throat and pinned her down with a baseball bat so that she had trouble breathing. The court respectfully submits that the evidence admitted at trial was sufficient to find the Appellant guilty of kidnapping. This court will not disturb the jury's verdict in this case. This issue is without merit.

### b. Involuntary Deviate Sexual Intercourse

A person is guilty of involuntary deviate sexual intercourse in Pennsylvania under 18 Pa.C.S.A. § 3123(a) (1) when that person engages in deviate sexual intercourse with a complainant by forcible compulsion. To find a defendant guilty of IDSI, a jury must find beyond a reasonable doubt that the defendant "engaged in sexual intercourse by force or by threat of force, the threat being the kind of threat that would have prevented a reasonable person, faced with the same circumstances present here, from resisting." *See* Pa. SSJI (Crim), 15.3123A (2016). Deviate sexual intercourse occurs if a man's penis penetrates the mouth or anus of a person, or if a person's tongue penetrates the sexual organ of a woman. *Id.*

At trial the Commonwealth presented evidence that established that the Appellant engaged in deviate sexual intercourse with the victim by force. The victim in this case testified

5

that the Appellant put his penis in her mouth and put his penis in her anus. N.T., 5/3/16, p. 63. She testified that the Appellant threatened her and that she was afraid to say no. This court will not substitute its judgment for that of the jury and reiterates that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." *Commonwealth v. Bishop,* 742 A.2d 178, 189 (Pa.Super.1999), *appeal denied,* 563 Pa. 638, 758 A.2d 1194 (2000). The court respectfully submits that the evidence was sufficient to support the Appellant's involuntary deviate sexual intercourse conviction. This issue is without merit.

## B. Amendment of the Bills of Information

Next, the Appellant claims that the court erred by permitting the Commonwealth to amend the informations in this case. Pa.R.Crim.P. 564 provides that the court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

The purpose of the information is to advise the defendant of the charges and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed. *Commonwealth v. Duda,* 831 A.2d 728, 732 (Pa. Super. 2003). In reviewing a grant to amend an information, the Court will determine whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results. *Commonwealth v. Sinclair,* 897 A.2d 1218, 1222 (Pa. Super. 2006).

6

In the case *sub judice*, the court recalls that prior to the commencement of trial the Commonwealth amended the grading of the Informations Counts 8 and 9, both simple assault charges, to reflect a grading of misdemeanor of the second degree instead of a misdemeanor of the first degree. N.T., 5/3/16, pp. 4-5. The Commonwealth explained to the court that there was an error because that there is no simple assault that is graded as a misdemeanor of the first degree. There was no objection to the downgrade by defense counsel. *Id.* at 5.

The Commonwealth then withdrew a number of charges and notified the court that it was also proceeding on Count 13, IDSI, a felony of the first degree, Count 14, sexual assault, a felony of the second degree, Count 15, aggravated indecent assault, a felony of the second degree, and Count 16, indecent assault, a misdemeanor of the second degree. *Id.* at 6-9. The Commonwealth then moved to amend Count 15 from the forcible compulsion section to section (a) (1), nonconsent, which was also a downgrade. *Id.* It then moved to do the same to Count 16, indecent assault. *Id.* at 8.

Lastly, the Commonwealth moved to amend the date set forth in the informations to reflect that the crime occurred on various dates on or about August 4th and 5th, 2015. *Id.* at 9-10.[5] This court respectfully submits that the Appellant had adequate notice of the charges against him. The amendments, which were downgrades, made by the Commonwealth were not of the nature that would cause any undue surprise that would warrant any relief. Moreover, the amendment of the date set forth in the information is explicitly permitted for within the statute. The court submits no relief is due.

## C. RRRI Eligibility

Appellant claims that the court erred when it imposed the Appellant's sentence without

---

[5] The informations previously set forth that the crime occurred on August 5, 2015. N.T., 5/3/16, p. 9-10.

7

making a determination regarding Appellant's RRRI eligibility. The court submits that the Appellant was not an eligible offender under the Recidivism Risk Reduction Incentive.

Pennsylvania law requires a sentencing court to make a determination whether a defendant is an eligible offender under the Recidivism Risk Reduction Incentive at the time of sentencing. 61 Pa.C.S.A. § 4505. "[I]t is legal error to fail to impose a RRRI minimum on an eligible offender." *Commonwealth v. Hanna*, 124 A.3d 757, 759 (Pa. Super. Ct. 2015). A challenge to a court's failure to impose an RRRI sentence implicates the legality of the sentence. *Id.*

At the time of sentencing, the court followed the recommendation of the Commonwealth who stated that the Appellant was not RRRI eligible due to the nature of his convictions. N.T., 6/1/17, p. 97.[6] The court respectfully submits that the Appellant's sentence was a legal one and that he was not entitled to a RRRI sentence.

## D. Severity of Sentence

In his final issue, Appellant asserts that the sentence imposed was harsh and excessive under the circumstances.

> Our Court has stated that the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

---

[6] The Appellant employed a deadly weapon, i.e., a knife and a baseball bat, during this offense which makes him ineligible for RRRI. *See Commonwealth v. Hanna*, 124 A.3d 757 (Pa. Super. 2015) (a plain reading of the statute excludes offenders who are convicted of an offense *involving* a deadly weapon).

8

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court.

*Commonwealth v. Harvard*, 64 A.3d 690, 701 (Pa. Super. 2013) (internal citation omitted).

This court submits that the Appellant's sentence was not excessive. In the case *sub judice*, before imposing the Appellant's sentence, this court considered the nature and seriousness of the crime, the age, family status, education and employment status of the Appellant, the statements and recommendations of the Commonwealth and defense counsel,[7] the Appellant's sentencing guidelines, the rehabilitative needs of the Appellant, and the protection of the public. *See* N.T. 6/1/17, p. 105. The court conducted a lengthy hearing in which the Appellant allocated at length. Id. at 59-94. The court then imposed a sentence of 90 to 180 months of incarceration on count 13, his IDSI conviction, with five years of consecutive probation; 12 to 24 months of incarceration on count 8, simple assault, to run consecutive to the sentence imposed on count 13; 12 to 24 months of incarceration on count 9, simple assault, to run consecutive to the sentence imposed on count 8; and 66 to 132 months of incarceration on count 1, his kidnapping conviction, to run *concurrent* to counts 13, 8, and 9. In sum, the court imposed an aggregate sentence of 114 to 228 months. *Id.* at 109-10. The court respectfully submits that each of the sentences imposed fall within the standard range suggested by the Pennsylvania Sentencing Guidelines. The crime committed by the Appellant was a heinous one.

---

[7] The Commonwealth asked the court for an aggregate sentence of 168 to 480 months. N.T., 6/1/17, p. 108.

Based on this record, the claim that an excessive sentence was imposed fails. *See generally Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015).

### III. Conclusion

In light of the aforementioned, it is respectfully submitted that the verdict is fully supported by the record and applicable legal authority, and that there is no merit to Appellant's appeal. It is for the reasons set forth above that this court respectfully submits that Appellant's Judgment of Sentence be affirmed.

BY THE COURT:

_____
GREGORY M. MALLON, JUDGE

10