PEOPLE v SCHUTTER
PEOPLE v HORNOF

Docket Nos. 257824, 257854. Submitted February 9, 2005, at Grand Rapids. Decided March 15, 2005, at 9:00 a.m.

Glen Schutter and Robert Hornof were each charged with ethnic intimidation and with assault and battery. The 61st District Court, David J. Buter, C.J., refused to bind the defendants over for trial on the ethnic intimidation charges, concluding that the assault was motivated by road rage and was not committed for the sole purpose of racial intimidation or harassment. The Kent Circuit Court, Dennis C. Kolenda, J., determined that the statute required only that the assault be committed with specific intent to harass or intimidate because of race. The circuit court concluded there was sufficient evidence that the defendants had the requisite specific intent, and ordered that the defendants be bound over on the ethnic intimidation charges. The defendants each appealed by leave granted, and the appeals were consolidated.

The Court of Appeals *held*:

The district court abused its discretion by failing to bind the defendants over on the ethnic intimidation charges. The plain language of the ethnic intimidation statute, MCL 750.147b(1)(a), requires only some act of physical contact committed maliciously and accompanied by a specific intent to intimidate or harass because of race, color, religion, gender, or national origin. The specific intent to intimidate or harass need not be the sole reason for the underlying criminal act and may be formed during the commission of the underlying criminal act, regardless of any additional motivation for the underlying criminal act that may have existed earlier. The evidence presented at the preliminary examination would allow a reasonable person to infer that the defendants violated the statute.

Affirmed.

CRIMINAL LAW — ETHNIC INTIMIDATION — SPECIFIC INTENT.

Ethnic intimidation under MCL 750.147b(1)(a) requires some act of physical contact committed maliciously and accompanied by a specific intent to intimidate or harass because of race, color,

religion, gender, or national origin; the specific intent to intimidate or harass need not be the sole reason for the underlying criminal act and may be formed during the commission of the underlying act, regardless of any additional motivation for the underlying criminal act that may have existed earlier.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, and *Timothy K. McMorrow*, Chief Appellate Attorney, for the people.

*Helen C. Nieuwenhuis* for Glen Schutter.

*Jeffrey P. Kirchhoff* for Robert Hornof.

Before: SCHUETTE, P.J., and FITZGERALD and BANDSTRA, JJ.

FITZGERALD, J. Defendants were each charged with one count of ethnic intimidation, MCL 750.147b, and one count of assault and battery, MCL 750.81(1). The district court refused to bind defendants over for trial on the charge of ethnic intimidation. Defendants appeal by leave granted the circuit court order reinstating the ethnic intimidation charges. We affirm.

On September 17, 2003, Ronald Robinson, Marcia Anderson, and their two young children were westbound on Fulton east of Fuller in the city of Grand Rapids. A westbound van occupied by defendants swerved in the direction of the Robinson vehicle, requiring panic stops by both drivers to avoid a collision. According to Anderson, as defendants' vehicle pulled ahead of the Robinson vehicle, defendant Hornof, the passenger, shouted "stupid niggers" at the occupants of the Robinson vehicle.

Both vehicles proceeded west on Fulton, with defendants' vehicle directly in front of the Robinson vehicle.

Defendant Hornof's father was traveling in a third vehicle just ahead of defendants' vehicle. Defendants' vehicle and the Robinson vehicle each passed the other at least once before reaching Fuller. According to Robinson and Anderson, defendant Hornof loudly and repeatedly expressed racial slurs as the vehicles passed. Witnesses described the operation of both vehicles as ranging from erratic to reckless. While defendants were in the lead, Robinson followed closely, swerving his vehicle. As he did so, defendant Schutter tapped his brakes and then slammed them, forcing both vehicles to stop. Robinson did the same when his vehicle was in the lead.

Defendants and Hornof, Sr., turned north on Fuller and then east onto the first side street, Evangeline, before stopping. Robinson's intention before the conflict with defendants was to turn left, or south, onto Fuller and then proceed to his home. Instead, he chose to turn north onto Fuller and follow defendants. He also turned east onto Evangeline, squealing his tires in the process. Robinson stopped his vehicle near the defendants and, from his vehicle, shouted, "What the fuck is the problem?" Racial slurs were exchanged. Robinson and Anderson testified that defendants frequently and angrily referred to them as "fucking niggers." Hornof, Sr., testified that Anderson referred to defendants as "bitch ass honkies" and "fuckin' crackers."

Defendants approached the Robinson vehicle. Robinson and Anderson testified that both defendants reached through the driver's window, but Hornof, Sr., testified that defendant Hornof was the only one at the window. Robinson testified that he thought defendants were trying to get at his gearshift or keys and that he was scratched in the process.

Robinson drove his vehicle forward approximately fifteen feet as defendants walked to their vehicle. It

appeared to most witnesses that the conflict was over. Robinson, however, abruptly stopped his vehicle, got out, and approached defendants. Robinson threw a punch, and defendants responded by severely beating Robinson. Witnesses testified that defendants directed racial slurs, such as "I'm going to fuck you up, nigger," toward Robinson during the beating.

Defendants were each subsequently charged with one count of ethnic intimidation and one count of assault and battery. Following the evidentiary portion of the preliminary examination, the district court entertained arguments concerning whether defendants should be bound over on the ethnic intimidation charges. Defendants argued that MCL 750.147b was not applicable because no evidence was adduced at the preliminary examination that defendants selected Robinson as their victim because of his race. Instead, the evidence established that Robinson became defendants' victim because he followed the defendants, got out of his vehicle, and threw a punch at them. What followed was a response to Robinson's actions. The racial epithets shouted by defendants were merely incidental to physical contact and not indicative of race-based selection of Robinson as a victim.

The district court refused to bind over defendants on the ethnic intimidation charges, finding that defendants' conduct did not constitute ethnic intimidation as defined by MCL 750.147b. The district court interpreted the statute to proscribe underlying criminal acts committed for the sole purpose of intimidating or harassing a person because of race. The court found that defendants' assault of Robinson was not ethnic intimidation because it was motivated by "road rage," not racial intimidation or harassment. The court noted that Robinson deviated from his regular route to follow

defendants because he was angry at their erratic driv-
ing, and that he voluntarily left his own vehicle to
engage in at least an exchange of words with defen-
dants. The court opined, "These are not the actions of a
person intimidated, but rather of a man willingly re-
maining involved in a long series of 'road rage' events."

On the prosecutor's interlocutory application for
leave to appeal to the circuit court, the circuit court
found that the interpretation of MCL 750.147b set forth
in *People v Richards,* 202 Mich App 377; 509 NW2d 528
(1993), was nonbinding dictum and "at odds with the
text of Section 147b . . . ." The circuit court held that
the statute requires only that the underlying criminal
act be committed "with specific intent to intimidate or
harass" and that the intent can be formed during the
commission of the underlying criminal act. Finding
evidence of the requisite specific intent, the circuit
court reversed the district court's decision and re-
manded for reinstatement of the ethnic intimidation
charges and for defendants to be bound over on those
charges. This Court granted defendants' applications
for leave to appeal.

The ethic intimidation statute, MCL 750.147b, pro-
vides:

> (1) A person is guilty of ethnic intimidation if that
> person maliciously, and with specific intent to intimidate or
> harass another person because of that person's race, color,
> religion, gender, or national origin, does any of the follow-
> ing:
>
> (a) Causes physical contact with another person.
>
> (b) Damages, destroys, or defaces any real or personal
> property of another person.
>
> (c) Threatens, by word or act, to do an act described in
> subdivision (a) or (b), if there is reasonable cause to believe
> that an act described in subdivision (a) or (b) will occur.

The question at the heart of these appeals is whether the statute requires the intent to intimidate or harass to be the sole motivating factor for the underlying criminal act or whether the requisite intent can be formed during the commission of the underlying criminal act, whatever the reason for the underlying criminal act. Although defendants argue that this Court is bound by this Court's interpretation of MCL 750.147b in *Richards* and *People v Stevens*, 230 Mich App 502; 584 NW2d 369 (1998), neither case specifically addresses the question presented in this case.

In *Richards*, this Court upheld the constitutionality of MCL 750.147b. As part of the discussion rejecting the defendant's claim that the statute was void for vagueness, the Court observed, "The statute is satisfied only when there is evidence of an underlying predicate criminal act committed because of racial animosity." *Richards, supra* at 379.

In *Stevens*, the defendant challenged the sufficiency of the evidence supporting his conviction for racial intimidation. This Court quoted *Richards* and then rejected the sufficiency challenge:

> As a previous panel of this Court has observed, "[t]he statute is satisfied only when there is evidence of an underlying predicate criminal act committed because of racial animosity." *People v Richards*, 202 Mich App 377, 379; 509 NW2d 528 (1993).
>
> Here, there was ample evidence that defendant threatened, by word *and* act, to cause physical contact with the complainant. In addition, defendant's act of throwing a punch at the complainant provided reasonable cause to believe that physical contact would occur. Testimony regarding defendant's words and acts also provided abundant circumstantial evidence that defendants' threat was made maliciously and with specific intent to intimidate or harass the complainant. Defendant does not appear to dispute

these points. Instead, defendant argues that there was insufficient evidence to support a finding that the threat was made because of the complainant's race or gender. Defendant argues that this was simply "an argument over an unruly child which became very heated and very ugly." However, defendant's argument ignores the strong circumstantial evidence that his motive was racist.

We recognize that, in the absence of other evidence, the fact that defendant started a heated argument over a trivial matter would probably not be sufficient to allow a jury to find defendant guilty of ethnic intimidation beyond a reasonable doubt. Here, however, defendant's words provided strong evidence of a racist motive. Defendant's use of the word "nigger," his reference to the complainant as a "black bitch," and his remark that "you people shouldn't be allowed in here" explained his otherwise inexplicable actions. Taken in the light most favorable to the prosecution, this evidence was sufficient to allow the jury to conclude that defendant was guilty beyond a reasonable doubt. [*Stevens, supra* at 505-506].

Neither *Richards* nor *Stevens* engaged in any statutory analysis to determine the specific elements of ethnic intimidation or expressly address whether the intent to intimidate or harass on the basis of race must be the sole reason for committing the underlying criminal act. Examination of the language of the statute is therefore necessary.

This Court reviews de novo matters of statutory interpretation. *Livonia Hotel, LLC v City of Livonia,* 259 Mich App 116, 130; 673 NW2d 763 (2003). The primary goal of judicial interpretation is to ascertain and effectuate the intent behind the statutory provision. If the plain and ordinary meaning of the language is clear, judicial construction of the statutory provision is not permitted. Judicial construction is appropriate only if reasonable minds can differ regarding the meaning of the statute. *Id.* at 130-131.

As pertinent to this case, MCL 750.147b(1)(a) requires an actor to cause physical contact with another person "maliciously, and with specific intent to intimidate or harass another person because of that person's race . . . ." This statutory language is rather straightforward and broad. It contains no limiting language to suggest that ethnic intimidation may be charged only when the specific intent to intimidate or harass is the sole reason for the underlying criminal act. Instead, the statute only requires some act of physical contact committed maliciously and accompanied by a specific intent to intimidate or harass because of race, color, religion, gender, or national origin. The circuit court properly interpreted the statute as being satisfied if this *specific intent is formed during the commission of the underlying criminal act.* That is so regardless of any other additional motivations for the underlying criminal act that may have existed earlier.

This Court exercises review de novo to determine whether defendants' conduct fell within the scope of conduct prohibited by MCL 750.147b. Additionally, this Court examines the district court's decision to determine whether the district judge abused his discretion in denying the bindover. *People v Greene,* 255 Mich App 426, 434; 661 NW2d 616 (2003).

Both the district court and the circuit court found that road rage was a motivating factor in defendants' assault of Robinson. Neither party challenges this finding. But testimonial evidence by three uninvolved bystanders indicates that after Robinson got out of his vehicle, defendants beat and kicked Robinson while saying, "Fuck you, nigger. Remember this. Remember this," and "we're gonna get you, nigger." Defendants' use of racial epithets and directives to "[r]emember this" give rise to a reasonable inference that defendants

specifically intended to beat Robinson because of his race. When this specific intent to intimidate Robinson on the basis of his race is combined with the accompanying beating of Robinson, it can reasonably be inferred that what may have started out as merely road rage escalated into an act of ethnic intimidation. The district court abused its discretion by failing to bind defendants over on the ethnic intimidation charges.

In light of the foregoing, we conclude that defendants' alleged conduct falls within the ambit of MCL 750.147b and that the evidence presented at the preliminary examination would allow a reasonable person to infer that defendants violated MCL 750.147b.

Affirmed.