30 A.3d 1105

COMMONWEALTH of Pennsylvania, Appellant

v.

Daniel SINNOTT, Appellee.

Supreme Court of Pennsylvania.

Argued March 8, 2011.

Decided Nov. 2, 2011.

Hugh J. Burns, Jr., Ronald Eisenberg, Arnold H. Gordon, Helen T. Kane, Philadelphia District Attorney's Office, Philadelphia, for Commonwealth of Pennsylvania.

Karl Baker, Defender Association of Philadelphia, Philadelphia, Victor Rauch, for Daniel Sinnott.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

*OPINION*

Justice EAKIN.

The Commonwealth appeals from the portion of the Superior Court order reversing appellee Daniel Sinnott's conviction for ethnic intimidation on the basis of insufficient evidence. We reverse, and reinstate that conviction and judgment of sentence.

At about 11:30 a.m. on May 21, 2007, the victim, Evelyn Rojas, was visiting her mother when she heard screaming and cursing outside the house. When Rojas went outside to investigate, she found appellee, a tenant and employee of her father, throwing power tools her father had given him against the concrete steps. When Rojas asked appellee what was wrong, he said her father cheated him, he was going to take every house her father owned, and then told her, "[Y]ou, M–F"ers, are going to have to go back to Mexico, you wetbacks." N.T. Trial, 11/26/07, at 9. He also called Rojas a "fucking bitch" and "fucking whore." *Id.*, at 9–10. Rojas told appellee she was not Mexican, but Puerto Rican, and therefore had as much right to be in the United States as he did; appellee replied, "No you don't, you wetback, go back to the Alamo." *Id.*, at 10. Rojas testified appellee kept talking about the Alamo and how her father "did him dirty," *id.*, and threatened to kill her father for cheating him. Rojas and her mother managed to pacify appellee, who went back inside his house.

When appellee emerged again and approached the women, he was wielding a power drill, which he kept revving. He walked around the block for about 45 minutes, and Rojas called the police. Meanwhile, appellee returned to his house, opened his front window, and pretended to videotape the two women. The police arrived when appellee was still inside his house; however, when they left, he came back outside with the drill in one hand and a hammer in the other. He quickly approached the women, advancing towards Rojas as if he were

going to hit her with the hammer; she instinctively put her hands up to stop him. Her long nails got caught in his shirt, and as the two struggled, four of her nails were ripped from their nail beds, causing her fingers to bleed.

Appellee retreated into his house, and the police returned. Appellee would not come out, but spoke to the officers through the open window, telling them to check Rojas' "green card." *Id.,* at 17. Once police gained entry into the house, they found a power drill on the floor next to appellee and arrested him.

Appellee was charged with simple assault,[1] terroristic threats,[2] ethnic intimidation,[3] and possession of instruments of crime.[4] He waived his right to a jury, and the trial court convicted him of all offenses, sentencing him to four to 23 months imprisonment for simple assault and a consecutive four years probation for terroristic threats; no further penalty was imposed.

Appellee appealed, challenging the sufficiency of the evidence in support of his terroristic threats and ethnic intimidation convictions. In a published opinion, the Superior Court affirmed the terroristic threats conviction, but reversed the conviction for ethnic intimidation, concluding the record failed to establish Rojas' ethnicity was the "primary basis" for appellee's behavior. *Commonwealth v. Sinnott,* 976 A.2d 1184, 1189 (Pa.Super.2009). The court noted penal statutes are to be strictly construed, *id.,* at 1190 (citing 1 Pa.C.S. § 1928(b)(1)), and opined 18 Pa.C.S. § 2710's requirement that the underlying offense be committed with "malicious intention" towards the victim's ethnicity could be met "only where the circumstances establish that the defendant was motivated by animus toward the victim's race or ethnicity *and targeted the victim expressly on that basis.*" *Sinnott,* at 1190 (emphasis in original) (citing *In re M.J.M.,* 858 A.2d 1259, 1267 (Pa.Super.2004); *Commonwealth v. Ferino,* 433 Pa.Super. 306,

1. 18 Pa.C.S. § 2701.
2. *Id.,* § 2706.
3. *Id.,* § 2710.
4. *Id.,* § 907.

640 A.2d 934, 938 (1994), *affirmed by an equally divided court,* 540 Pa. 51, 655 A.2d 506, 507 (1995); *Commonwealth v. Rink,* 393 Pa.Super. 554, 574 A.2d 1078, 1084 (1990)).

The Superior Court concluded the record supported appellee's contention that his ethnically derogatory remarks and threatening behavior were the product of circumstances unrelated to the victim's race, *i.e.,* appellee's anger with the victim's father over their employment relationship. Examining the statute's language, the court stated it was "not convinced of the provision's applicability where the testimony and circumstances suggest a more limited motivation." *Id.* Thus, the court held although appellee's anger did not justify his repeated use of ethnically derogatory terms, it did suggest that his commission of the underlying offense (terroristic threats) "was driven *principally* by factors other than the [victim's] ethnicity." *Id.,* at 1191 (emphasis added). Accordingly, the court reversed appellee's ethnic intimidation conviction.

The Commonwealth petitioned for allowance of appeal, which we granted, to determine:

> Whether, to prove ethnic intimidation pursuant to 18 Pa. C.S. § 2710, the Commonwealth must prove the defendant targeted the victim solely based on the victim's race, color, religion, or national origin.

*Commonwealth v. Sinnott,* 605 Pa. 455, 991 A.2d 305, 305 (2010).

As the proper construction of a statute involves a question of law, *see Commonwealth v. Bavusa,* 574 Pa. 620, 832 A.2d 1042, 1049 (2003), our scope of review is plenary, and our standard of review is *de novo. See Commonwealth v. Santiago,* 602 Pa. 159, 978 A.2d 349, 352 n. 4 (2009). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). When a statute's words "are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.,* § 1921(b). Penal statutes are to be strictly construed, *id.,*

§ 1928(b)(1), and the Crimes Code states its provisions are to be "construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved." 18 Pa.C.S. § 105.

The ethnic intimidation statute provides:

(a) Offense defined.—A person commits the offense of ethnic intimidation if, *with malicious intention* toward the race, color, religion or national origin of another individual or group of individuals, he commits an offense under any other provision of this article ... with respect to such individual or his or her property or with respect to one or more members of such group or to their property.

\*       \*       \*

(c) Definition.—As used in this section *"malicious intention" means the intention to commit any act,* the commission of which is a necessary element of any offense referred to in subsection (a) *motivated by hatred toward the race, color, religion or national origin* of another individual or group of individuals.

*Id.,* § 2710(a), (c) (emphasis added).[5]

The Commonwealth contends the Superior Court erred in interpreting the ethnic intimidation statute to require that the defendant commit the predicate crime with a single and exclusive improper motive, *i.e.,* ethnic hatred. It argues the co-existence of other motives along with malicious intent toward the victim's ethnicity does not negate the element of malicious intent; the presence of multiple motives does not diminish the sufficiency of any individual motive. Here, the Commonwealth claims appellee possessed the requisite mali-

5. This language reflects the statute as originally enacted. *See* Act of 1982, June 18, P.L. 537, No. 154, § 1. The language was amended in 2002 to include additional categories of protected persons, *see* Act of 2002, Dec. 3, P.L. 1176, No. 143, § 1; however, the amendment was subsequently deemed unconstitutional. *See Marcavage v. Rendell,* 936 A.2d 188, 193–94 (Pa.Cmwlth.2007), *affirmed,* 597 Pa. 371, 951 A.2d 345, 346 (2008) (*per curiam*). Thus, appellee's conviction was under the statute without amendment.

cious intent toward the victim's ethnicity, along with his anger with her father. Thus, the Commonwealth argues, appellee's hatred toward the victim's national origin should not be negated by the additional fact that he was angry with her father.

The Commonwealth further contends the Superior Court erroneously relied on *Ferino*, which is not only distinguishable on its facts, but also wrongly decided.[6] Finally, the Commonwealth posits the Superior Court improperly invaded the factfinder's province by choosing which of appellee's two existing motives for the predicate offense was dominant.

Appellee contends § 2710 requires the victim be selected because of animus toward the victim's ethnicity. Appearing to concede such animus need not be the defendant's *sole* motivation for committing the predicate offense, he contends *some* animus must exist, and such motivation was absent in his case. He claims his sole motivation for his conduct toward the victim was his anger with her father, and as in *Ferino*, there was no evidence of ethnic hatred behind his actions.

Neither the Superior Court nor this Court has specifically addressed the instant issue. *Ferino*, cited by the Superior Court, involved the issue of whether the defendant's singular use of the word "nigger" while firing a gun at two victims, one of whom was Caucasian and one of whom was African–American, was sufficient to support a conviction of ethnic intimidation. The Superior Court observed § 2710 requires that in the course of committing the predicate offense, "the actor must manifest a malicious intent toward the intended victim and have as its motivation the hatred of the victim's 'race, color, religion or national origin.'" *Ferino*, at 937 (quoting 18 Pa.C.S. § 2710(a), (c)). This is an accurate summation of § 2710's malicious intent requirement, which does not imply ethnic malice must be the *sole* motivator. Rather, the *Ferino* court concluded the evidence was insufficient because, based on the unique facts, there was *no* ethnic malice found present at all. The defendant's comment was singular,

6. Our grant of review did not encompass whether an exception for isolated or singular evidence of ethnic malice exists, and we decline to reconsider the issue at this time.

his conduct was isolated, and his words and behavior were directed at *both* victims, only one of whom was black. Under these circumstances, the court concluded the evidence was insufficient to show a racial motivation for the underlying offense of terroristic threats. *Id.*, at 938. This Court, being evenly divided, affirmed by *per curiam* order. Here, unlike *Ferino*, appellee's ethnic epithets were repeated numerous times over an extended period of time, and were specifically directed at the victim during the commission of the underlying offenses; therefore, *Ferino* is distinguishable on its facts.

The Court of Appeals of Michigan has examined a similar issue; its decision, although not binding, is instructive. In *People v. Schutter*, 265 Mich.App. 423, 695 N.W.2d 360 (2005), the court addressed "whether the [ethnic intimidation] statute requires the intent to intimidate or harass to be the sole motivating factor for the underlying criminal act or whether the requisite intent can be formed during the commission of the underlying criminal act, whatever the reason for the underlying predicate criminal act." *Id.*, at 362.

*Schutter* involved an incident of road rage, where the Caucasian defendants and African–American victim almost collided. Both parties continued driving, shouting racial slurs at one another and eventually stopping near each other. More racial slurs were exchanged before the victim threw a punch at the defendants, who responded by severely beating the victim, uttering additional racial slurs as they did so. Charged with ethnic intimidation, and assault and battery, they argued there was no evidence they selected the victim because of his race; rather, they contended he became their victim because he followed them, got out of his car, and threw a punch at them. They claimed the racial epithets they shouted during the beating were merely incidental to the physical contact and were not indicative of race-based selection of the victim.

The Michigan Court of Appeals rejected this argument, noting its ethnic intimidation statute:[7]

7. The statute's full text provides:

requires an actor to cause physical contact with another person "maliciously, and with specific intent to intimidate or harass another person because of that person's race...." This statutory language is rather straightforward and broad. It contains no limiting language to suggest that ethnic intimidation may only be charged when the specific intent to intimidate or harass is the sole reason for the underlying criminal act. Instead, the statute only requires some act of physical contact committed maliciously and accompanied by a specific intent to intimidate or harass because of race, color, religion, gender, or national origin. The circuit court properly interpreted the statute as being satisfied if this specific intent is formed during the commission of the underlying criminal act. That is so regardless of any other additional motivations for the underlying criminal act that may have existed earlier.

*Id.*, at 363–64 (quoting Mich. Comp. Laws § 750.147b(1)(a)). The court held "that what may have started out as merely road rage escalated into an act of ethnic intimidation." *Id.*, at 364. Thus, the court concluded the evidence was sufficient to bind the defendants over for trial on ethnic intimidation charges.

As in *Schutter*, the language of our ethnic intimidation statute is straightforward and broad: an actor who commits one of the predicate offenses "with malicious intention toward the race, color, religion or national origin" of the victim is guilty. 18 Pa.C.S. § 2710(a). Malicious intention is defined as "the intention to commit any act ... motivated by hatred toward the [victim's] race, color, religion or national ori-

(1) A person is guilty of ethnic intimidation if that person maliciously, and with specific intent to intimidate or harass another person because of that person's race, color, religion, gender, or national origin, does any of the following:
(a) Causes physical contact with another person.
(b) Damages, destroys, or defaces any real or personal property of another person.
(c) Threatens, by word or act, to do an act described in subdivision (a) or (b), if there is reasonable cause to believe that an act described in subdivision (a) or (b) will occur.
Mich. Comp. Laws § 750.147b(1)(a).

gin...." *Id.*, § 2710(c). Neither definition contains limiting language such as "solely" or "only"; all that is required is that the ethnically malicious intent be present, concurrent with the underlying criminal act. The legislature could have easily inserted specific language to require the ethnically malicious intent be the sole motivation behind the criminal act; however, it did not.

Human beings may act with a single, exclusive motive; they may act for multiple reasons. Where one intent is criminal under § 2710 and the other not, the question is not which is primary or dominant. If the evidence of criminal intent (here, racial animus) is sufficiently established, it cannot be negated by establishing that a second intent coexisted in the mind of the actor. Such a rule would lead to an absurd result which the legislature did not intend. *See* 1 Pa.C.S. § 1922(1) (legislature does not intend result that is absurd, impossible of execution, or unreasonable). Accordingly, we hold § 2710's intent element is satisfied if there is evidence that ethnic malice was *a* motivator for the defendant's criminal act; it need not be the *sole* motivator.

Furthermore, we note the Superior Court, in crediting appellee's explanation for his attack on the victim, did not apply the proper standard of review. In reviewing a challenge to the sufficiency of the evidence, an appellate court is to consider the evidence admitted at trial and all reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1237 (2007). An appellate court may not substitute its judgment for that of the fact-finder; the critical inquiry is not whether the court believes the evidence established guilt beyond a reasonable doubt, but whether the evidence believed by the fact-finder was sufficient to support the verdict. *Id.*, at 1235–36. The proper question is not whether the defendant's contentions are supported by the record, but whether the verdict is so supported.

Evidence existed that appellee was motivated by racial animus; he made repeated references to the victim's national

origin (albeit mistaken) while behaving in a physically menacing manner, committing an assault on her, which he did not contest. Evidence also existed that appellee was motivated by his anger with the victim's father; during the incident, he asserted her father had cheated him. However, the victim was not the father but the daughter. The trial court, as the fact-finder, concluded sufficient evidence existed to conclude that appellee's conduct was motivated by malicious intent toward the victim's ethnicity.

In crediting appellee's contention that his conduct was solely motivated by anger with the victim's father, the Superior Court not only imposed a non-existing requirement that racial animus be the sole or primary motivator, but also failed to view the evidence of appellee's repeated derogatory ethnic slurs in the light most favorable to the Commonwealth as the verdict winner.

■ Accordingly, we reverse the portion of the Superior Court's order reversing appellee's ethnic intimidation conviction, and reinstate the judgment of sentence for that offense.[8] In all other aspects, the order is affirmed.

Order affirmed in part, reversed in part; jurisdiction relinquished.

Chief Justice CASTILLE, Justices SAYLOR, BAER, TODD, McCAFFERY and ORIE MELVIN join the opinion.

___

**8.** Because the trial court imposed no sentence for appellee's ethnic intimidation conviction, remand for resentencing is unnecessary. *See Sinnott,* at 1191 n. 2.