J-A10012-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :---: |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRETT MCDOWELL | : | |
| | : | |
| Appellant | : | No. 884 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 15, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005758-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :---: |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRETT MCDOWELL | : | |
| | : | |
| Appellant | : | No. 922 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 28, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005759-2021

BEFORE: PANELLA, P.J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED JULY 06, 2023**

Brett McDowell appeals from the judgment of sentence imposed following his convictions of two counts each of ethnic intimidation, aggravated assault, possessing instruments of crime, simple assault, and recklessly endangering another person, and one count each of theft of services and

---

[*] Former Justice specially assigned to the Superior Court.

disorderly conduct. McDowell argues that the evidence was insufficient to support his ethnic intimidation convictions; he should not have been convicted of two counts of possessing instruments of crimes because he possessed one knife during a single brief incident; and his ethnic intimidation sentences were illegal. We affirm the convictions, vacate the sentence, and remand for resentencing.

On June 2, 2021, McDowell jumped a SEPTA turnstile at 15th and Market Street in Philadelphia without paying the $2.50 fare. Three SEPTA security guards, Tairi Profit, Jerry Corley, and Lakisha Jessie were standing nearby. The guards ordered McDowell to pay before proceeding. McDowell declined, saying he had no money and was not going to pay. McDowell then repeated a series of obscene language and racial slurs at the guards, including "[n-word], fuck you, [n-word]." Notably, McDowell is Caucasian, and the guards are African-American.

Profit and Corley followed McDowell down the steps to the subway platform, and McDowell continued to unleash insults towards the guards. After reaching the subway platform, McDowell retrieved a seven-inch kitchen knife from his backpack and stated: "Yawl [n-words] ain't fuckin' me up today." McDowell walked towards Profit and Corley, who then retreated. Subsequently, police officers arrested McDowell, and the Commonwealth charged him with various crimes.

After waiving his right to a jury trial, the case proceeded to a bench trial before the Honorable Charles Ehrlich. Profit, McDowell, and the arresting officer testified at the bench trial. Following trial, Judge Ehrlich found McDowell guilty of the aforementioned crimes. Thereafter, Judge Ehrlich sentenced McDowell to 2 to 4 years in prison, followed by 5 years of probation on each of two counts of aggravated assault and two counts of ethnic intimidation, with the sentences to be served concurrently. The trial court imposed no further penalty on the remaining convictions. McDowell timely appealed.

On appeal, McDowell raises the following questions for our review:

1. Was it an error of law for the trial court to convict and sentence [] McDowell of two counts of possession of an instrument of crime (PIC) where the evidence showed he possessed the knife once during a single brief incident when the two complainants stood side by side?

2. Was the evidence insufficient to prove ethnic intimidation where the motivation for the underlying act was not ethnic or racial hatred but simply the desire to escape security guards chasing him?

3. Was it an error of law for the trial court to sentence [] McDowell to two concurrent terms of two to four years incarceration plus five years probation for two counts of ethnic intimidation, a felony of the third degree?

Appellant's Brief at 5.

In his first claim, McDowell contends that he should not have been convicted of or sentenced on two counts of possessing instruments of crime "where he possessed one knife one time in a single brief incident where he held it while approaching two security guards who were standing next to each

- 3 -

other." ***Id.*** at 11. McDowell insists that "[w]here a weapon is held in a single criminal event, the crime of possession of an instrument of crime occurs only once, regardless of the number of persons present." ***Id.***; ***see also id.*** at 13 (rejecting the trial court's focus on the fact that there were two dockets with two complaining witnesses, arguing that the number of dockets is not relevant and that "only where there are two distinct acts involving possession of the weapon each time, in separate places at different times, can there be two convictions."). McDowell highlights that the statutory language of 18 Pa.C.S.A. § 907(a) states that to obtain a conviction, the Commonwealth must prove that a person possessed a weapon with the intent to criminally employ it, and argues the evidence established that he brandished the knife one time. ***See id.*** at 12-14. McDowell concludes that he should only have been convicted and sentenced on one count of possessing instruments of crime. ***See id.*** at 14.

For the purpose of determining whether the Commonwealth can charge a single offense in separate counts, we must determine what the General Assembly has defined as the allowable unit of prosecution for a violation of Section 907. ***See Commonwealth v. Satterfield***, 255 A.3d 438, 445 (Pa. 2021). "The unit of prosecution is the actus reus that the General Assembly intended to punish. Put otherwise, the unit of prosecution is the minimum conduct that must be proven to obtain a conviction for the statute in question." ***Id.*** at 445-46. "To determine the correct unit of prosecution, the inquiry should focus on whether separate and distinct prohibited acts … have been

committed." *Id.* at 446 (citation and brackets omitted). The resolution of this issue is "intertwined with the sufficiency of the evidence." ***Commonwealth v. Andrews***, 768 A.2d 309, 313 (Pa. 2001).

Our standard of review for sufficiency claims is as follows:

The standard we apply is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Edwards***, 229 A.3d 298, 305-06 (Pa. Super. 2020) (citation, brackets, and ellipses omitted).

To sustain a conviction for possession of an instrument of crime, the Commonwealth must prove that the defendant (1) possessed an instrument of crime, (2) with the intent to employ it criminally. ***See*** 18 Pa.C.S.A. § 907(a). Based upon the plain language of the statute, "it is the actor's criminal purpose that provides the touchstone of his liability for possessing an

instrument of crime." ***Andrews***, 768 A.2d at 317 (citation and quotation marks omitted).

The statutory language in section 907 does not include any indication that the General Assembly intended a violation to be based upon the number of victims. ***See*** 18 Pa.C.S.A. § 907(a); ***Satterfield***, 255 A.3d at 448. Rather, the relevant inquiry is primarily upon McDowell's intent and whether his use of the knife "was the product of a singular criminal intent or reflective of multiple manifestations of intent associated with each act." ***Andrews***, 768 A.2d at 313. Here, Profit testified that McDowell stopped at the subway platform, took off his backpack, pulled out a large knife, and waved it at Profit and Corley. ***See*** N.T., 10/21/21, at 10-13, 22-24. Similarly, McDowell testified that after he felt threatened by the guards, he pulled out the knife and stepped towards them. ***See id.*** at 38, 41-42. Viewed in light most favorable to the Commonwealth, this evidence was sufficient to establish that McDowell used the knife with the intent to threaten to injure both Profit and Corley.[1]

---

[1] We note that McDowell does not challenge on appeal that the evidence at trial was sufficient to convict him of the aggravated assault of both Profit and Corley. While this is not dispositive of McDowell's challenge to his convictions for possessing instruments of crime, it certainly does not undercut our conclusion that the evidence was sufficient to establish he acted with the intent to threaten both guards.

Accordingly, we affirm both of McDowell's possessing instruments of crime convictions.[2]

In his second claim, McDowell contends that the evidence was insufficient to support his ethnic intimidation convictions because the ethnicity of the guards was irrelevant to his actions. *See* Appellant's Brief at 14, 17. While conceding the racial epithets were ugly, McDowell argues that he "would have jumped the turnstile, run away from any guards chasing him and pulled a knife to get them to back off, no matter what color or ethnicity they may have been." *Id.* at 14. McDowell claims that he was not motivated by hatred for the guards' race, ethnicity, or national origin. *See id.* at 17. McDowell notes that he only used the racial epithet two times and that his use of the term does not establish ethnic intimidation without some further proof of his intent. *See id.* at 18. McDowell claims that the use of this epithet does not provide sufficient proof of a crime, noting that the offensive word is used commonly in society. *See id.* McDowell concludes he was telling the guards to "back off" and the epithet was not used with "malicious intention toward" the guards. *See id.*

"A person commits the offense of ethnic intimidation if, with malicious intention toward the race ... of another individual or group of individuals, he commits an offense [of aggravated assault] with respect to such individual ...

---

[2] As the Commonwealth highlights, McDowell received no penalty on either of the counts. *See* Brief for the Commonwealth at 7.

or with respect to one or more members of such group[.]" 18 Pa.C.S.A. § 2710(a). Malicious intention is defined as "the intention to commit any act, the commission of which is a necessary element of any offense referred to in subsection (a) motivated by hatred toward the race ... of another individual or group of individuals." 18 Pa.C.S.A. § 2710(c). The malicious intention element required for conviction "is satisfied if there is evidence that ethnic malice was *a* motivator for the defendant's criminal act; it need not be the sole motivator." ***Commonwealth v. Sinnott***, 30 A.3d 1105, 1110 (Pa. 2011) (emphasis in original).

Here, Profit testified that he was patrolling a SEPTA station in Philadelphia on June 2, 2021, when he observed McDowell evade paying the required fare. ***See*** N.T., 10/21/21, at 10-11, 21-22. After reporting the fare evasion on his radio, Profit indicated that McDowell repeatedly stated, "fuck you, [n-word]." ***Id.*** at 12. After following McDowell to the platform, Profit stated that McDowell pulled out a knife and was swinging it at him and Corley. ***Id.*** at 13, 22, 24, 28, 30. Profit testified that he and Corley backed away after seeing the knife. ***See id.*** at 18, 29-30.

McDowell admitted that he jumped the SEPTA turnstile. ***See id.*** at 36-37, 41. After the guards approached him, McDowell told them he did not have any money to pay the fare and went down the steps to the platform. ***See id.*** at 37-38. McDowell indicated that the guards began following him down the steps and he saw one of the guards reach for something in a backpack. ***See***

*id.* at 38. Feeling threatened, McDowell pulled a knife out of his backpack and told the guards, "Yawl [n-words] ain't fuckin' me up today." *Id.* at 39. McDowell explained that he was raised in Camden, New Jersey, and was merely "speaking Ebonics," which was his usual manner of speaking. *See id.* at 38, 39-40. McDowell indicated he walked toward the guards but did not swing the knife at them. *See id.* at 38, 41. McDowell testified that the guards retreated from him and he then boarded the train. *See id.* at 39.

As a preliminary matter, McDowell does not dispute that he was properly convicted of two counts of aggravated assault, predicate offenses for ethnic intimidation pursuant to Section 2710(a). Moreover, when viewing the evidence in a light most favorable to the Commonwealth, we conclude that a fact-finder could find that McDowell's actions were motivated by malicious intent towards the guards' race under these circumstances. Here, McDowell repeated "[n-word], fuck you, [n-word]" at the African-American security guards. Further, McDowell yelled "Yawl [n-words] ain't fuckin' me up today," while holding a knife and advancing on the guards. While a fact-finder is not required to find racial animus under these circumstances, this evidence was nonetheless sufficient to allow for an inference that McDowell's behavior was motivated by malicious intent towards the guards' race. *See Sinnott*, 30 A.3d at 1110-11 (concluding that "[e]vidence existed that appellee was motivated by racial animus; he made repeated references to the victim's national origin (albeit mistaken) while behaving in a physically menacing manner, committing

an assault on her, which he did not contest."). Accordingly, when this specific intent to intimidate the two guards on the basis of their race is combined with the use of the knife, the fact-finder was entitled to reasonably infer that McDowell committed two acts of ethnic intimidation. **See id.**[3]

In his final claim, McDowell contends that the trial court imposed illegal sentences on his ethnic intimidation convictions. **See** Appellant's Brief at 19. McDowell notes that these convictions are felonies of the third degree and the maximum sentence for such felonies is seven years. **See id.** McDowell argues that the trial court's imposition of a sentence of 2 to 4 years in prison, followed by 5 years of probation surpasses the maximum allowed under the law. **See**

---

[3] We note that in **Commonwealth v. Ferino**, 640 A.2d 934 (Pa. Super. 1994), this Court determined that shouting, "I'm going to kill you, you f—king [n-word]" immediately prior to firing a gun at the victims (one black and one white) did not constitute sufficient evidence that malicious intention was the ["]underlying cause for the prohibited behavior." **Id.** at 938. This Court explained that "the [defendant's] conduct was isolated in nature, brief in its execution and unattended by any trappings consistent with a finding that the terroristic threat [the predicate crime] had an origin of malicious intent 'motivated by a hatred toward race, color … or national origin' of the victim." **Id.** However, the Supreme Court in **Sinnott** found **Ferino** to be factually distinguishable because the **Ferino** defendant's comment was singular and isolated, and his words were directed at both victims, only one of whom was black, while in **Sinnott**, the appellee's ethnic epithets were repeated numerous times, and were directed at the victim during the commission of the underlying crimes. **See Sinnott**, 30 A.3d at 1109. Likewise, McDowell repeatedly directed racial epithets at the African-American security guards and repeated the epithet during the commission of the aggravated assault offenses. Therefore, **Ferino** is factually distinguishable from this case.

*id.* McDowell highlights that the trial court acknowledged this error in its opinion. *See id.*[4]

> A challenge to the legality of a sentence is a question of law. Thus, our standard of review is *de novo* and our scope of review is plenary. … A claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. Likewise, a sentence that exceeds the statutory maximum is illegal. If a court imposes a sentence outside of the legal parameters prescribed by the applicable statute, the sentence is illegal and should be remanded for correction.

*Commonwealth v. Bickerstaff*, 204 A.3d 988, 995 (Pa. Super. 2019) (citations omitted).

McDowell's ethnic intimidation convictions were graded as third-degree felonies. The maximum sentence allowed for a third-degree felony is seven years. *See* 18 Pa.C.S.A. § 1103(3). Notably, a sentencing court is free to impose a split sentence including both imprisonment and probation, but the total amount of time imposed in a split sentence cannot exceed the statutory maximum. *See Commonwealth v. Crump*, 995 A.2d 1280, 1283 (Pa. Super. 2010). Here, the trial court sentenced McDowell to 2 to 4 years in prison, followed by 5 years of probation for each of his ethnic intimidation convictions. Therefore, the trial court imposed a maximum sentence of 9 years, which is well above the statutory maximum of 7 years. *See* Trial Court Opinion,

---

[4] The Commonwealth concedes the ethnic intimidation sentences are illegal. *See* Brief for the Commonwealth at 9.

8/25/22, at 17 (wherein the trial court concedes that it imposed illegal sentences on the ethnic intimidation convictions). Based on the foregoing, we vacate McDowell's unlawful sentences, and remand for resentencing. ***See id.*** (acknowledging that the total sentence would not change due to the legal aggravated assault sentences, the trial court nevertheless requests that the matter be remanded for resentencing on the ethnic intimidation convictions).

In sum, we affirm McDowell's convictions, vacate the ethnic intimidation sentences, and remand for resentencing.

Judgment of sentence affirmed in part and vacated in part. Case remanded for resentencing. Jurisdiction relinquished.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 7/6/2023*