2024 PA Super 279

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PATRICIA SCARCELLI | : | |
| | : | |
| Appellant | : | No. 2737 EDA 2023 |

Appeal from the Judgment of Sentence Entered September 18, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005425-2022

BEFORE: STABILE, J., BECK, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED NOVEMBER 20, 2024**

Appellant, Patricia Scarcelli, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following her conviction at a bench trial on one count each of terroristic threats (M1), harassment (M3), and ethnic intimidation (F3).[1] After a careful review, we affirm the convictions. However, we vacate the sentence for 18 Pa.C.S.A. § 2706(a)(1), terroristic threats. We affirm the judgment of sentence in all other respects.

The relevant facts and procedural history are as follows: On August 5, 2022, the Commonwealth filed an Information charging Appellant with the offenses *supra*, and on June 6, 2023, Appellant, who was represented by

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2706(a)(1), 2709(a)(4), and 2710(a), respectively,

counsel, proceeded to a bench trial. At trial, the Commonwealth presented the testimony of Ann Peters and Benjamin Green, both of whom are longtime residents of a "quiet" block with row homes in Philadelphia, Pennsylvania. N.T. 6/6/23, at 10-12. For several decades, Appellant lived in the house between the Peters and Green family homes. *Id.* Appellant and Ms. Peters are Caucasian while Mr. Green is African American. *Id.* at 24, 27.

Ms. Peters, who lives next door to Appellant, testified that, on May 27, 2021, at approximately 2:00 a.m., she was in her front bedroom, which faces the street, and she heard Appellant "outside cursing, screaming, and yelling threats." *Id.* at 11, 18. Ms. Peters "peeked" outside and confirmed it was Appellant. *Id.* at 18. Ms. Peters heard Appellant threatening to shoot her neighbor, Mr. Green, who is known in the neighborhood as "The Rev" because he is the reverend of the local church. *Id.* at 11. Specifically, Ms. Peters heard Appellant yell: "Rev, you better get out. Get your nappy head out here because I'm going to shoot you." *Id.* at 14. Ms. Peters testified that "nappy head" is a "racial slur." *Id.* She noted that she is married to an African American man, and she has previously heard these words directed towards her husband in a racially negative manner. *Id.* at 16.

Ms. Peters testified she also heard Appellant yelling that she was going to get her rifle, and she accused Mr. Green of "doing something to her house in the attic." *Id.* at 14. Appellant threatened to destroy Mr. Green's property and indicated "he wouldn't be able to get his people to fix it." *Id.* at 13. Ms.

Peters testified Appellant "continued on for approximately twenty minutes," and she was "very angry." *Id.* at 16, 25. Ms. Peters testified she felt "nauseous" when she heard Appellant yelling, and she interpreted Appellant's words as a threat to Mr. Green. *Id.* at 13. Ms. Peters provided a videotape from her security camera to Mr. Green. *Id.* at 17.

On cross-examination, Ms. Peters indicated she went to the police station with Mr. Green, and while she was there, she gave a police statement. *Id.* at 19-20. The police statement indicated Ms. Peters reported the following, in relevant part:

> Two nights ago, [Appellant] was outside screaming, cursing, threatening to shoot Reverend Green, as she calls him, "The Rev," his wife, and myself. This went on for at least 30 minutes, and I went out and I said to her, "Who are you calling out?" I spent a year of this….I tried to calm her down, but then I just went in the house.

*Id.* at 20-21.

Ms. Peters clarified that she never went outside, so the police statement was inaccurate in that respect. *Id.* at 21. Rather, she spoke to Appellant through a window. *Id.*

Mr. Green, who confirmed he lives next door to Appellant, testified he was home on May 27, 2021, at 2:00 a.m., when he heard Appellant making "a lot of noise." *Id.* at 27. He "looked out the window, and [he] could see that [Appellant] was there." *Id.* Appellant was standing between her driveway and Mr. Green's driveway but closer to Mr. Green's side. *Id.* at 37. Appellant yelled "a lot of expletives…and [made] threats to [him], [his] wife, and [his]

mother-in-law." *Id.* at 27. Mr. Green indicated Appellant used the "F" word and made "references to his ethnicity[, which is] African American." *Id.* He testified Appellant told him to "bring [his] nappy head outside so she could shoot and kill [him]." *Id.*

Mr. Green testified that "nappy head" is a known racial slur. *Id.* at 28. He explained that "[t]he texture of [African American] hair is something that is deemed derogatory." *Id.* Mr. Green testified he felt "very concerned" and "threatened" by Appellant's statements. *Id.* Mr. Green indicated he called 911 to report that his neighbor was threatening to kill him, but the police did not respond. *Id.* at 29, 34. He went to the police station the next day to report the incident. *Id.* at 34.

Mr. Green testified Appellant "for some reason [has] developed some sort of hatred or just something racial about [him]." *Id.* at 30. He noted that, during the incident, Appellant accused him of damaging her gutters and property; however, Mr. Green testified that he has done no such thing. *Id.* at 36. Since this incident, he has been on "high alert every single day that [he] comes out the door." *Id.* at 31.

At the conclusion of trial, the trial court found Appellant guilty of the offenses set forth *supra*, and on September 18, 2023, Appellant proceeded to a sentencing hearing. The trial court sentenced Appellant to three months to twelve months in prison for Count 1-terroristic threats (M1), and for Count 3-ethnic intimidation (F3), the trial court sentenced Appellant to three months

to twelve months in prison. The sentences were imposed concurrently. No further penalty was imposed for Count 2-harassment (M3). Appellant did not file post-sentence motions; however, she filed a timely, counseled appeal on October 18, 2023. All Pa.R.A.P. 1925(b) requirements have been met.

On appeal, Appellant sets forth the following issues in her "Statement of Questions Presented" (verbatim):

A. Was not Ms. Scarcelli erroneously convicted of 18 Pa.C.S.A. § 2710, as the evidence was insufficient to establish that her conduct was motivated by racial hatred, where she threatened both a black neighbor and white neighbor with whom she had an ongoing property related feud?

B. Did not the trial judge illegally impose sentences on both ethnic intimidation and terroristic threats, as 42 Pa.C.S.A. § 9765 and caselaw mandate that those offenses merge for sentencing purposes?

Appellant's Brief at 3 (answers omitted).

In her first issue, Appellant contends the evidence was insufficient to sustain her conviction for ethnic intimidation under 18 Pa.C.S.A. § 2710(a). Appellant indicates she made an "avalanche of insults" and threatened Ms. Peters (who is Caucasian) and Mr. Green (who is African American), and, thus, she "does not dispute her convictions for terroristic threats and harassment." Appellant's Brief at 8.

However, she indicates there is no evidence of any words specifically motivated by "malicious intention" or "hatred" towards anyone's race, religion, or national origin. ***See id.*** She specifically contends the "two off-the-cuff references to 'nappy-headed' were rattled off impulsively along with a

- 5 -

hodgepodge of expletives and non-racial insults hurled at Mr. Green[,]" and the use of the phrase does not establish ethnic intimidation without some further proof of her intent. *Id.* at 10. Thus, she insists her conviction for ethnic intimidation is not supported by sufficient evidence.

A claim impugning the sufficiency of the evidence presents us with a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). Our standard of review is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brooks*, 7 A.3d 852, 856-57 (Pa.Super. 2010) (citations omitted).

The Crimes Code provides as follows for the offense of ethnic intimidation:

**§ 2710. Ethnic intimidation**

- 6 -

**(a) Offense defined.--**A person commits the offense of ethnic intimidation if, with malicious intention toward the race, color, religion or national origin of another individual or group of individuals, he commits an offense under any other provision of this article or under Chapter 33 (relating to arson, criminal mischief and other property destruction) exclusive of section 3307 (relating to institutional vandalism) or under section 3503 (relating to criminal trespass) with respect to such individual or his or her property or with respect to one or more members of such group or to their property.

\*\*\*

**(c) Definition.--**As used in this section "malicious intention" means the intention to commit any act, the commission of which is a necessary element of any offense referred to in subsection (a) motivated by hatred toward the race, color, religion or national origin of another individual or group of individuals.

18 Pa.C.S.A. § 2710(a), (c) (bold in original).

Preliminarily, as indicated *supra*, Appellant does not dispute that she was properly convicted of terroristic threats, which is a predicate offense for ethnic intimidation under Section 2710(a).[2] Appellant's Brief at 8. Moreover, she does not dispute that she made two statements towards Mr. Green threatening his "nappy head." ***Id.*** at 8. Viewing the evidence in the light most favorable to the Commonwealth, as the verdict winner, we conclude that the trial court, as the fact-finder, could find that Appellant's actions were motivated by malicious intent towards Mr. Green's race under the circumstances at issue.

---

[2] Appellant was also convicted of harassment, which is a predicate offense for ethnic intimidation. However, as discussed *infra*, given the grading of the offenses, the terroristic threats offense was the predicate offense in this case.

Relevantly, the trial court explained:

> Both Mr. Green and Ms. Peters testified that when Appellant used the term "nappy head," they understood her to be making a racial slur against [African American] people, Mr. Green in particular. N.T. 6/6/23, at 15, 27. Mr. Green was frightened by Appellant's racial slurs and threats, and [he] was very concerned for his family and his family's lives. ***Id.*** at 28.
>
> ***
>
> The Commonwealth need not prove that racial animus is the sole motivating factor to make out a charge of ethnic intimidation; it must only prove that racial animus is a motivating factor for the conduct. Here, ample evidence supported [the trial] court's conclusion that Appellant's conduct towards Mr. Green was at least in part racially motivated. Appellant repeatedly referred to Mr. Green as having a "nappy head," a phrase that has historically been used as an ethnic slur against [African American] people. Appellant's anger at her belief that neighbors were damaging her property does not, for purposes of the ethnic intimidation statute, cancel out the racial animus she displayed in her language. Indeed, the fact that Appellant directed her tirade at her [African American] neighbor, Mr. Green, while largely ignoring her [Caucasian] neighbor, Ms. Peters, buttresses [the trial] court's conclusion that ethnic malice was a major factor in her decision to behave as she did.

Trial Court Opinion, filed 1/22/24, at 3, 6-7 (citation omitted).

We agree with the trial court's sound reasoning. The record reveals that Appellant yelled outside, closer to Mr. Green's home than her own home, and directed various insults and profanities towards him. During this communication, as Appellant admits, on at least two occasions, she referred to Mr. Green as having a "nappy head." Both Commonwealth witnesses testified to their experience with this phrase being used with malicious intent against African Americans.

We note that we specifically reject Appellant's claim that, because her racially motivated language was included with other expletives and non-racial slurs, we must conclude that she did not have a "malicious intention," *i.e.*, her terroristic threats were not motivated by hatred toward the race of Mr. Green. She suggests her "motive" was a paranoid anger regarding someone damaging her property.

However, as the trial court aptly recognized, the malicious intention element required for an ethnic intimidation conviction "is satisfied if there is evidence that ethnic malice was *a* motivator for the defendant's criminal act; it need not be the sole motivator." ***Commonwealth v. Sinnott***, 612 Pa. 321, 30 A.3d 1105, 1110 (2011) (emphasis in original). As our Supreme Court has held:

> Human beings may act with a single, exclusive motive; they may act for multiple reasons. Where one intent is criminal under [Section] 2710 and the other is not, the question is not which is primary or dominant. If the evidence of criminal intent (here, racial animus) is sufficiently established, it cannot be negated by establishing that a second intent coexisted in the mind of the actor. Such a rule would lead to an absurd result which the legislature did not intend. ***See*** 1 Pa.C.S.A. § 1922(1) (legislature does not intend result that is absurd, impossible of execution, or unreasonable).

***Sinnott***, ***supra***, 30 A.3d at 331.

Furthermore, to the extent Appellant suggests that her conviction for ethnic intimidation cannot stand because she also yelled at Ms. Peters, who is Caucasian, we note that in forming this argument, Appellant relies on Ms. Peters' cross-examination wherein she indicated she told the police that

Appellant was yelling at Mr. Green, Mr. Green's wife, and herself. As the trial court notes, the testimony establishes that Appellant's threats were directed primarily towards Mr. Green, and the record supports the trial court's conclusion.

Moreover, the testimony establishes Appellant's ethnically motivated statements were clearly and solely directed toward Mr. Green. Ms. Peters testified Appellant referred to "The Rev," which is a nickname for Mr. Green, while making the references to "nappy head," and Mr. Green's testimony establishes that, from context, the phrases were directed at him. The trial court so found, as was within its purview. **Brooks**, **supra**. Accordingly, we find no merit to Appellant's sufficiency of the evidence claim.

In her second claim, Appellant contends her sentence is illegal under 42 Pa.C.S.A. § 9765. Specifically, she contends her conviction for terroristic threats should have merged with her conviction for ethnic intimidation for sentencing purposes. In this vein, she argues the crimes arose from a single criminal act, and all of the statutory elements of terroristic threats are included in the statutory elements for ethnic intimidation. She notes that, given the grading of the ethnic intimidation offense as a F3 in this case, the crime of terroristic threats was the predicate offense for ethnic intimidation under Section 2710(b), and, thus, under 42 Pa.C.S.A. § 9765, the offenses merged. She highlights that the trial court agrees with her analysis and recommends

in its Pa.R.A.P. 1925(a) opinion that this Court find the offenses should have merged for sentencing.[3]

Whether Appellant's convictions merge for sentencing is a question implicating the legality of Appellant's sentence. Consequently, our standard of review is *de novo*, and the scope of our review is plenary. **See Commonwealth v. Collins**, 564 Pa. 144, 764 A.2d 1056, 1057 n.1 (2001).

Section 9765, relating to the merger of sentences, provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.

As our Supreme Court has indicated: "The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." **Commonwealth v. Baldwin**, 604 Pa. 34, 985 A.2d 830, 833 (2009).

Here, there is no dispute that the crimes for which Appellant was convicted "arose from a single criminal act." **Id.** At issue is Appellant's claim that all of the statutory elements of one of the offenses (terroristic threats)

---

[3] We note the Commonwealth indicates in its appellate brief that it concurs with the trial court's rationale.

are included in the statutory elements of the other offense (ethnic intimidation). In this vein, she argues her conviction for terroristic threats was a necessary underlying element for her conviction for ethnic intimidation, and, thus, the convictions merged.

In resolving Appellant's claim, it is necessary to, again, examine the language of the ethnic intimidation statute. The statute relevantly provides:

> **(a) Offense defined.--**A person commits the offense of ethnic intimidation if, with malicious intention toward the race, color, religion or national origin of another individual or group of individuals, he commits an offense under any other provision of this article. . . .
>
> **(b) Grading.--**An offense under this section shall be classified as a misdemeanor of the third degree if the other offense is classified as a summary offense. Otherwise, an offense under this section shall be classified one degree higher in the classification specified in section 106 (relating to classes of offenses) than the classification of the other offense.

18 Pa.C.S.A. § 2710(a), (b) (bold in original).

As the statute plainly provides, relevantly, to be guilty of ethnic intimidation, the person must commit "an offense under any other provision of this article[.]"[4] *Id.* The relevant article is "Article B. Offenses Involving Danger to the Person (§ 2301 to § 3220)". A plain reading of the statutory text clearly provides that "the commission of the predicate offense is an element of ethnic intimidation." ***Commonwealth v. Baker-Myers***, 667 Pa.

---

[4] The remaining portion of Subsection 2710(a) regarding other predicate offenses is not at issue in this case.

70, 255 A.3d 223, 230 (2021). *See Commonwealth v. Magliocco*, 584 Pa. 244, 883 A.2d 479 (2005) (holding the commission of a predicate offense is a statutory element of the ethnic intimidation offense).

Here, while both harassment (M3) and terroristic threats (M1) are offenses, which could have been used as the predicate offense for ethnic intimidation, based on the grading of the ethnic intimidation offense as a F3 in this case,[5] the trial court, as requested by the Commonwealth, used terroristic threats as the predicate offense for the crime of ethnic intimidation. Accordingly, the offense of terroristic threats should have merged with the offense of ethnic intimidation for sentencing. While the trial court imposed separate sentences for the offenses, it ran the sentences concurrently. Consequently, because our disposition does not upset the trial court's overall sentencing scheme or affect Appellant's aggregate sentence, we agree with the trial court's recommendation that it is unnecessary to remand for resentencing. *Commonwealth v. Thur*, 906 A.2d 552 (Pa.Super. 2006).

Accordingly, we affirm Appellant's convictions. We vacate solely the sentence for terroristic threats under 18 Pa.C.S.A. § 2706(a)(1), and we do not remand. We affirm the judgment in all other respects.

---

[5] The offense of terroristic threats in this case is graded as a M1, and the offense of harassment in this case is graded as a M3. Using terroristic threats as the predicate offense, the trial court graded Appellant's offense of ethnic intimidation as a F3, which is "one degree higher in the classification specified in Section 106…than the classification of the other offense." 18 Pa.C.S.A. § 2710(b).

Convictions affirmed. Judgment of sentence at 18 Pa.C.S.A. § 2706(a)(1) vacated. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/20/2024